UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TLT CONSTRUCTION CORP.,<br><br>                      Plaintiff,<br><br>              v.<br><br>SEATING SOLUTIONS RI, INC.,<br><br>                      Defendant. | CIVIL ACTION<br>NO. 05-10223-LTS |

**PROPOSED JOINT STATEMENT OF MATERIAL FACTS**

RI, Inc., d/b/a Seating Solutions ("Seating"), sued herein as "Seating Solutions RI, Inc.," and TLT Construction Corp. ("TLT" or "Plaintiff") hereby submit this Joint Statement of Material Facts:

**A.    The Parties and the Projects**

    1.    TLT, a Massachusetts corporation with its principal office located in Wakefield Massachusetts, is a construction company that has worked on numerous large scale projects in Massachusetts since it was founded in 1976.

    2.    Seating, a New York corporation based in Hauppauge, New York, is in the seating system design and construction industry and specializes in the sale, rental, and installation of custom-designed spectator seating at athletic and recreational facilities.

    3.    TLT is the general contractor on construction projects relating to the renovation and expansion of high schools in Reading and Holden, Massachusetts (the "Projects").

**B.    TLT Bids on the Projects**

    4.    TLT submitted a bid to serve as the general contractor on a project to construct an

addition to Wachusett Regional High School in Holden, Massachusetts (the "Wachusett Project") on January 28, 2004.

5. TLT's bid on the Wachusett Project was accepted by the owner, the Town of Holden.

6. Other general contractors submitted bids on the Reading Memorial High School renovation project (the "Reading Project").

7. TLT was one of the general contractors on this list.

8. TLT submitted its bid on the Reading Project on April 6, 2004.

9. TLT's bid on the Reading Project was accepted by the owner, the Reading School Committee.

C. **Seating Submits Quotes and the Parties Negotiate**

10. On April 5, 2004, Seating sent a quote to TLT for the Reading project that was $396,548.87, or $425,120.30 with a fully closed welded deck. A true copy of the quote is attached hereto as *Exhibit 1*. Seating sent similar quotes to J&J Contractors, Inc., Peabody Construction Co., the Morganti Group, Inc., and Eastern Contractors, Inc. TLT has no present knowledge of whether Seating sent quotes to any other contractors.

11. When Seating submitted its quote for the Reading project it was unaware that TLT had also been awarded the contract on the Wachusett Project. TLT has no knowledge whether Seating was or was not aware of the status of the Wachusett Project.

12. On May 10, 2004, TLT requested a quote for bleacher packages for both of the Projects and stated that the quote needed to be prepared by May 12, 2004. A true copy of this facsimile is attached hereto as *Exhibit 2*.

13. On May 12, 2004, Seating sent TLT a quote for the Projects for a total price of

2

$567,678.00. A true copy of the Quote is attached hereto as *Exhibit 3*.

14.  In response, TLT informed Seating that the price of $567,678.00 was too high.

15.  On May 17, 2004, Seating sent TLT a quote stating the total price for both projects would be $480,000, but that the quote was contingent upon a letter of intent being received on the following day and a standard AIA contract being executed by May 19, 2004. A true copy of the May 17 Quote is attached hereto as *Exhibit 4*.

16.  After receiving this quote, TLT responded by facsimile on the same day by stating that (i) it needed a cost breakdown for both projects; (ii) a bond was being offered by Seating's competitors; (iii) TLT was working on getting the "no retainage" request approved; and (iv) that a letter of intent would have to suffice and that a contract could not be executed in the tight timeframe. A true copy of this facsimile is attached hereto as *Exhibit 5*.

17.  Seating sent TLT a letter in response stating that the cost of the Reading Project would be $283,026 delivered and installed, that the cost of the home bleacher for the Wachusett Project would be $159,283.00 delivered and installed, and that the cost of the visitor bleacher for the Wachusett Project would be $37,691.00 delivered and installed. The total price quoted for both projects was therefore $480,000.00. Seating also informed TLT that this pricing did not include a bond and that Seating would allow TLT two weeks to draw up and execute a contract before it had to change its pricing structure. A true copy of this letter, dated May 17, 2004, is attached hereto as *Exhibit 6*.

18.  On May 17, 2004, after receiving the letter described in Paragraph 17, TLT sent Seating a facsimile agreeing to total contract price of $480,000.00 for the Projects. A true copy of this facsimile is attached hereto as *Exhibit 7*. At approximately the same time, TLT sent Seating a facsimile stating that "[w]e have a deal if we can split the bond." A true copy of this

facsimile is attached hereto as *Exhibit 8*.

19. On or about May 21, 2004, TLT sent Seating contracts for the Projects and requested that they be signed and returned within five days. A true copy of this letter is attached hereto as *Exhibit 9*.

20. The contracts sent by TLT were not standard AIA contracts.

21. On June 4, 2004, TLT contacted Seating and requested that Seating return signed copies of the contract, a certificate of insurance, and payment and performance bonds for the Reading Project.

22. On June 21, 2004, TLT sent Seating a letter requesting that Seating submit a schedule of values for the Reading project. A true copy of this letter is attached hereto as *Exhibit 10*.

23. Also on June 21, 2004, TLT sent a letter requesting that Seating return signed contracts and certificates of insurance to TLT. A true copy of this letter is attached hereto as *Exhibit 11*.

24. On June 22, 2004, Marc Ligator of Seating ("Ligator") sent Chris Cormier of TLT ("Cormier") a letter attaching the certificate of insurance and raising specific concerns regarding the retainage requirement in the contract sent by TLT, the time frame for submittals, whether TLT was requiring union labor on the Projects, and Seating's need for additional information in the General Contract so that it could be aware of the contract scope. A true copy of this letter is attached hereto as *Exhibit 12*.

25. On June 25, 2004, TLT sent Seating a letter notifying it of problems with the certificates of insurance that Seating provided for the Projects.

26. On June 28, 2004, Ligator sent TLT a letter stating that Seating could not alter

certain aspects of its insurance certificate and would have to charge TLT a higher price if TLT required an umbrella insurance policy. A true copy of this letter is attached hereto as *Exhibit 13*.

27. The following day, TLT responded to Ligator's letter stating that neither of the insurance issues would be a problem and requested that Seating mark up and return the contracts that it had. A true copy of this letter is attached hereto as *Exhibit 14*.

28. On or about July 5, 2004, Seating returned signed contracts for the Projects to TLT that (i) redacted provisions requiring Seating to obtain payment and performance bonds; (ii) added a provision stating that "Seating Solutions standard insurance limits apply to this contract"; (iii) added a provision stating that shop drawings would be received within six weeks of the execution of the contract; and (iv) deleted a provision requiring Seating to use union carpenters and apprentices. True copies of the executed contracts for the Projects are attached hereto as *Exhibits 15* and *16*.

29. TLT never returned signed copies of *Exhibits 15* and *16*.

30. On July 12, 2004, Seating informed TLT that the total cost increase on the Projects that would result from the requirement that union labor be used would be $128,350.00.

31. On July 21, 2004, TLT sent a new draft contract to Seating for the Wachusett Project. A true copy of the draft contract is attached hereto as *Exhibit 17*.

32. Seating did not return signed copies of the contract draft sent on July 21, 2004.

33. On July 29, 2004, TLT sent Seating another letter requesting that Seating return signed contracts and certificates of insurance to Seating. A true copy of this letter is attached hereto as *Exhibit 18*.

34. On August 13, 2004, Seating sent TLT a letter stating that while Wachusett Project pricing would remain the same, Seating would increase its delivered and assembled price

for the Reading Project by $19,236.00 due to addenda to project specifications and the architect's insistence upon an I-Beam unit. A true copy of this letter is attached hereto as *Exhibit 19*.

35. On August 18, 2004, Seating provided TLT with a certificate of insurance for its supplier Outdoor Aluminum and stated that bonding would not be an issue. A true copy of this letter is attached hereto as *Exhibit 20*.

36. On August 19, 2004, TLT stated that it did not believe that the price increase for I-Beam construction was justified because the original quotes provided by Seating included I-Beam units. A true copy of this letter is attached hereto as *Exhibit 21*.

37. On August 20, 2004, Seating responded by stating that existing specifications were vague and contradictory, and that in clarifying the inconsistencies, Seating determined that it needed to increase its offered price. A true copy of this letter is attached hereto as *Exhibit 22*.

38. On August 23, 2004, TLT sent Seating a letter stating that if it wished to increase the contract price it should submit a request for a change order. A true copy of this letter is attached hereto as *Exhibit 23*.

39. Also on August 23, 2004, TLT sent Seating a letter stating that Seating had not met the insurance certificate requirements for the Projects. True copies of these letters are attached hereto as *Exhibit 24*.

40. On August 30, 2004, Seating contacted TLT and stated that it was withdrawing all quotes and proposals that it had provided up to that date. A true copy of this letter is attached hereto as *Exhibit 25*.

41. On September 7, 2004, TLT's counsel sent Seating a letter stating that refusal to proceed by Seating would be actionable. A true copy of this letter is attached hereto as *Exhibit 26*.

42. Ligator responded to TLT's counsel on September 14, 2004. He stated that Seating would be happy to proceed based upon its "pre-bid" quote, which was higher than $480,000.00 for both projects. A true copy of this letter is attached hereto as *Exhibit 27*.

43. The parties reopened negotiations in October of 2004.

44. On October 20, 2004, Seating sent TLT a letter stating that it would be willing to proceed on both projects for a total price of $488,043.00. A true copy of this letter is attached hereto as *Exhibit 28*.

45. On October 22, 2004, Matt Henry of TLT ("Henry") sent Ligator a letter requesting an explanation for the approximately eight thousand dollar increase in the price above the figure quoted by Seating in May of 2004. A true copy of this letter is attached hereto as *Exhibit 29*.

46. Ligator responded by stating that old pricing had expired and that the price quoted was based upon Seating's review of the Projects with current costs in mind. A true copy of this letter is attached hereto as *Exhibit 30*.

47. Later on October 22, 2004, Ligator sent a letter to TLT stating that Seating's pricing was based on using its own employees at prevailing wage and stating that if union labor would be required it would be TLT's responsibility to absorb any cost increase that resulted. A true copy of this letter is attached hereto as *Exhibit 31*.

48. On October 26, 2004, Ligator requested that TLT send Article No. 2 of the general conditions of the contract between TLT and the Reading School Committee. A true copy of this letter is attached hereto as *Exhibit 32*.

49. TLT provided Seating with the requested information on October 27, 2004.

50. On November 1, 2004, Ligator sent a letter to Kostinden stating that Seating

needed a firm delivery date. The letter stated that Seating would need a fifty percent deposit with a balance up to $450,000.00 due upon delivery of material. A true copy of this letter is attached hereto as *Exhibit 33*.

51.   On December 1, 2004, TLT's counsel sent Ligator a letter representing that Ligator and Kostinden had reached a resolution on terms on November 9, 2004 and that Kostinden expected the contracts to be endorsed and returned together with bonds. A true copy of this letter is attached hereto as *Exhibit 34*.

52.   On December 6, 2004, Ligator sent a facsimile to TLT's counsel again offering to honor any "pre-bid" proposal that it made to TLT, which was higher than $480,000.00 for both projects. A true copy of this letter is attached hereto as *Exhibit 35*.

53.   On December 6, 2004, TLT's counsel sent Ligator a response requesting that he execute and forward contracts for both projects in the amount of $450,000.00, as well as providing payment and performance bonds. A true copy of this letter is attached hereto as *Exhibit 36*.

54.   On December 15, 2004, Thomas Kostinden of TLT sent a facsimile to Marc Ligator of Seating demanding that Seating send signed contracts, insurance certificates, and performance and payment bonds to TLT. A true copy of this facsimile is attached hereto as *Exhibit 37*.

55.   On December 17, 2004, Ligator responded and offered to meet with TLT in early January of 2005 to requote the project. A true copy of this letter is attached hereto as *Exhibit 38*.

56.   The parties were unable to resolve their differences in early January.

57.   TLT ultimately paid Gallivan Company, Inc. $316,800.00 for the scope of work on the Reading Project that had been the subject of the negotiations with Seating.

Dated: July 1, 2005

                                  RI, INC. d/b/a SEATING SOLUTIONS

                                  By its attorney,

                                  /s/ Terry Klein

                                  THE LAW OFFICE OF TERRY KLEIN
                                  Terry Klein, BBO# 652052
                                  1558 Dorchester Avenue, Ste. 202
                                  Dorchester, Massachusetts 02122
                                  Telephone: (617) 825-8175
                                  Facsimile: (617) 507-6454

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record for each other party by first class mail on July 1, 2005.

/s/ Terry Klein