UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TLT CONSTRUCTION CORP., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SEATING SOLUTIONS RI, INC., )<br>)<br>Defendant. )<br>) | CIVIL ACTION<br>NO. 05-10223-LTS |

### AFFIDAVIT OF THOMAS V. KOSTINDEN

I, Thomas V. Kostinden, having been duly sworn, and having personal knowledge of the matters set forth herein, do aver and say as follows:

1. I am the President of TLT Construction Corp. ("TLT").

2. I was involved in negotiations with RI, Inc. d/b/a Seating Solutions ("Seating") with regard to the public construction projects known and referred to as the Wachusset Regional High School, Wachusett, MA ("Wachusett") and Reading High School, Reading, MA ("Reading").

3. Seating offered to provide bleachers on both projects at a combined price of $480,000. *See Exhibits 4 & 6.*[1]

4. After some negotiation, Seating tendered marked-up and signed contracts for both projects to our office on or about July 5, 2004. *See Exhibits 15 & 16.*

5. After returning the signed contracts, Seating asked that TLT forward conformed copies of the contract forms with corrections as noted to replace the contract forms actually

---

[1] *Exhibits 1-38* are attached to Defendant's Proposed Joint Statement of Facts, dated July 1, 2005; *Exhibits 15A, 16A, 16B, and 39-41* are attached to Plaintiff's Response to Proposed Joint Statement of Facts, dated July 22, 2005.

executed with Seating's handwritten mark-ups, and TLT sent clean versions on July 21, 2004, but Seating did not return those forms to TLT. *See Exhibit 17.*

6. TLT agreed that Seating would not be required to provide union labor, only to pay their own labor at prevailing wage rates. *Exhibit 17.*

7. TLT agreed that bonding would be treated as an extra to the contract. *See Exhibits 16B & 20.*

8. TLT agreed that Seating would provide insurance at their own rates, and that Seating would provide certificates of insurance. *Exhibits 14, 15 & 16.*

9. The contracts specifically incorporate by reference the General Conditions of TLT's general contracts with the respective owners under Article 4(1), which states that "**the subcontractor agrees to be bound to the Contractor by the terms of the Agreement, General Conditions, Drawings, Specifications, Alternates, and Addenda, and to assume to him all the obligations and responsibilities that he, by those documents, assumes toward the Owner.**" *Exhibits 15 & 16.*

10. Seating did not provide the required insurance certification as agreed and promised, failing to include contractually-required elements such as the inclusion of TLT, the owners and architects as additional insured, a description of the Projects, a standard hold-harmless agreement, and proof of insurance coverage in Massachusetts. *See Exhibits 15, 15A (Reading General Conditions §§ 5.3.1, 11.1.1, 11.1.2, 11.1.3), 16, 16A (Wachusett General Conditions §§ 5.3.1, 11.1.1, 11.1.2, 11.1.3), 20 & 24.*

11. All insurance certificates submitted by Seating were actually under the name of a third party, Outdoor Aluminum. *Exhibits 20 & 24.*

12. Seating never submitted insurance certificates in their own name. *See Exhibit 20.*

13. TLT and Seating reached an agreement with regard to bonding provisions, whereby Seating would provide a bond and pass the cost along to TLT as an add-on. *Exhibits 15, 16, 16B & 20.*

14. TLT repeatedly requested that Seating follow the terms of the contract that they had marked up and agreed to. *Exhibits 21, 23, 24, 26, 34 & 37.*

15. Seating continually stalled, raising issues such as insurance and labor rates that had already been finalized. *Exhibits 19, 22, 25 & 31.*

16. On August 13, 2004, Seating notified TLT that the price would have to be higher due to the use of I-Beams, even though Seating had acknowledged that the Reading Project required I-beams in their original quote of April 4, 2004, but did not follow the claims procedures set out in the contract documents for any extra work items. *Exhibits 1, 15, 15A (Reading General Conditions §§ 3.2.1, 3.2.4, 4.3.4, 5.3.1, 7.1.1, 7.2.1), 16 & 16A (Wachusett General Conditions §§ 3.2.1, 3.2.2, 4.3.3, 5.3.1, 7.2.1, 7.2.2.2), 19, 21, 22 & 23.*

17. The use of an I-beam was established as a part of the Reading contract. *See Exhibits 1, 4 & 23.*

18. Seating repeatedly attempted to increase the price and change the terms that they had agreed to, citing aluminum prices being at a higher rate than when they signed the contract. *Exhibits 19, 27, 28, 33, 35 & 39.*

19. TLT's efforts to enforce the contract as signed were met with resistance and denial. *Exhibits 25, 27, 35 & 38.*

20. TLT ultimately was forced to contract with Gallivan Company, Inc. to perform the seating system work on both projects for a total cost of $514,160. *Exhibits 40 & 41.*

21.     Seating never sought to follow the change order provisions of the contract documents. *Exhibits 15, 15A (Reading General Conditions §§ 3.2.1, 3.2.4, 4.3.7, 5.3.1, 7.1.1, 7.2.1), 16 & 16A (Wachusett General Conditions §§ 4.4.1, 5.3.1, 7.2.1, 7.2.2.2).*

22.     TLT was under a time constraint to complete its work under the respective general contracts.

Signed under the pains and penalties of perjury.

_____
Thomas V. Kostinden
TLT Construction Corp.

## CERTIFICATE OF SERVICE

I, Patrick J. Sullivan, hereby certify that on **22** day of July, 2005, I served a copy of:

1. Plaintiff's Cross-Motion for Summary Judgment;

2. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment;

3. Plaintiff's Response to Proposed Joint Statement of Material Facts; and

4. Affidavit of Thomas V. Kostinden

via first class mail, upon:

                Terry Klein, Esq.
                Law Office of Terry Klein
                1558 Dorchester Avenue
                Dorchester, MA 02122

                                            _____
                                            Patrick J. Sullivan