UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TLT CONSTRUCTION CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 05-10223-LTS |
| RI, INC., D/B/A/ SEATING SOLUTIONS ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION IN REGARD TO SAME**

TLT Construction Corp. ("TLT") and RI, Inc., d/b/a Seating Solutions ("Seating") reached agreement on contractual provisions. Seating affirmed its intention to be bound on July 5, 2003 when it signed a contract accepting terms. The ultimate failure in performance of the contract came about because Seating refused to follow through on the agreement to which it bound itself. Seating continues to belabor a misdirected *Loranger* argument that TLT has previously corrected. Importantly, the initial misperception of counsel came well after the operative events between the parties had taken place, and is not at all dispositive of what the parties did prior to the matter being referred to counsel. TLT was not relying on counsel in the ordinary course of business, and counsel's initial misperception of the pertinent facts and applicable law caused no prejudice.[1] Continuing to raise this issue is a distraction from the real issue at hand. Here, TLT was not damaged by reliance on Seating's pre-bid quotes, but by reliance on the contracts that Seating signed.

---

[1] While Seating refers to TLT's assertion that a contract was executed a "new theory of liability," (Defendant's Reply Memorandum, p. 2), TLT's complaint was properly plead in the alternative and clearly stated that Seating executed contracts. Complaint, ¶¶ 11, 12.

1

**I. The issues raised by Seating are red herrings and distractions.**

TLT relies on the facts spelled out by the undisputed documentation in this case. The Parties agreed to the terms of contracts and indicated their intention to be bound. *See, e.g., McCarthy v. Tobin*, 429 Mass. 84, 87 (1999). TLT was not requiring union labor, and the Parties had agreed upon bonding terms. Exs. 15, 16, 16B, 20. Seating breached the contracts through their failure to submit adequate insurance certificates and their refusal to perform the contract work as agreed. Exs. 15, 15A, 16, 16A, 18, 20, 24. Seating actively sought to extort more money out of TLT by delaying their performance and is now raising specious arguments to distract this Court from the enforceable contracts.

**A. Union Labor**

Seating claims that union labor was an unresolved issue but has proffered no documentation in support thereof other than stipulations in contracts that Seating removed before signing. Exs. 15, 16. Seating crossed all union labor provisions out of the July 5 contract before signing, and TLT accepted the modifications. Exs. 15, 16; Affidavit of Thomas Kostinden ("Kostinden"), ¶ 6. Seating provided alternate pricing in the event that they were required to use union labor, and could simply point to these prices and their contract in submitting change orders if subsequently requested to use union labor. Exs. 15, 15A (Reading General Conditions §§ 3.2.1, 4.3.7, 5.3.1, 7.1.1, 7.2.1), 16, 16A (Wachusett General Conditions §§ 4.4.1, 5.3.1, 7.2.1, 7.2.2.2), 16B. Even this issue is a distraction, though, from the fact that union labor was not required and was simply not an issue. Affidavit of Kostinden, ¶ 6.

**B. Bonding**

Seating also argues that the inclusion of bonding in the "clean" version of the contract is proof that bonding remained unresolved and prevented the formation of contracts. Defendant's Reply Memorandum, p. 3; Ex. 17. However, the bonding provisions were included in the clean contract because the Parties had agreed that Seating would provide bonding and TLT would pay for it as an extra to the contracts. Exs. 16b, 20. At least two statements from Seating confirm that bonding would not be a problem. Exs. 16B, 20.

**C. Contract Forms**

Seating also argues that there were no contracts formed because TLT did not send standard AIA contracts. Defendant's Reply Memorandum, p. 5. This should be disregarded as Seating signed the contracts presented by TLT, and whether they were AIA contracts or not is another red herring. Exs. 15, 16. Seating did not mention AIA contracts after submitting their quotes, and did not raise this contention in the ordinary course of documenting their alleged issues, but has raised it in litigation as a pretext for avoiding its contractual duties and refusing to honor its promises. Defendant's Reply Memorandum, p. 5. Accordingly, it is Seating, not TLT, that is raising irrelevant and immaterial facts in an attempt to distract the Court from the fact that an agreement was reached between the parties.

**D. Insurance**

The contract was made, the terms were agreed upon, and Seating proved their intention to be bound by signing the contract. Exs. 15, 16; *see, e.g., McCarthy*, 429 Mass. at 87. Insurance was not an issue, as TLT and Seating agreed on insurance provisions before Seating signed the contract. Ex. 13, 14. The problem with insurance arose because Seating did not provide the insurance certificates that they had agreed to in July, delivering incomplete certificates in the

name of Outdoor Aluminum. Exs. 15, 16, 20, 24; Affidavit of Kostinden, ¶¶ 10-12. This failure to provide the promised insurance certificates was not a part of negotiations, but a breach of the contracts. *See* M.G.L. c. 149 § 34A ("Failure to provide and continue in force such insurance as aforesaid shall be deemed a material breach of the contract"); Exs. 15, 16, 20, 24.

**E. Extortion**

The fact that is evidenced by the documentation in the case is that Seating entered into a contract and subsequently wanted more money, whether it was $19,236, $8,043, or $100,000. Exs. 15, 16, 19, 22, 27, 28, 30, 35, 39. Seating delayed in submitting its promised and contractually required insurance certificates, and ultimately refused to perform because it was unsuccessful in its efforts to extort more money from TLT. Exs. 15, 16, 19, 20, 22, 24, 25, 27, 28, 30, 35, 39. Seating claims that it is TLT who delayed contracts by including extra terms, but the documents prove that Seating was simply looking for a pretext to back out of the contract. *Id.*; Defendant's Reply Memorandum, p. 1, 5. Whether it was because the contracts contained handwritten markups, or because of Seating's contention that they would have to use an I-beam (after acknowledging this requirement in earlier quotes), or because steel prices had risen, Seating was never short for excuses to avoid honoring the contract as agreed to. Exs. 19, 22, 28, 30, 33, 37, 39. The contradictions of their statements and lack of support for their allegations highlights the fact that Seating was simply looking to extort more money from TLT.

**II. The Affidavit of Thomas Kostinden**

Fed. R. Civ. P. 56(e) holds that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Mr. Kostinden notes in his affidavit that he is the President of TLT, and that he was involved in the negotiations with Seating with regard to

the work to be performed at the Reading and Wachusett Projects. Affidavit of Kostinden, ¶¶ 1-2. Mr. Kostinden thus has the personal knowledge and competency to testify to these matters. See Fed. R. Civ. P. 56 (e). The statements in Mr. Kostinden's affidavit support the fact that TLT and Seating had reached an agreement and had the required intention to be bound to the terms thereof. *See, e.g., McCarthy*, 429 Mass. at 87.

Defendant argues that "Thomas Kostinden makes a number of categorical statements based on his conclusion that Seating and TLT had reached an agreement." Defendant's Reply Memorandum, pp.4-5. However, the statements in Mr. Kostinden's affidavit are based on his personal knowledge of the matters in this case, and "set forth facts as would be admissible in evidence." Fed. R. Civ. P. 56(e). Further, the statements that Seating refers to as "categorical" and conclusory are backed up by documents and exhibits. See Affidavit of Kostinden, ¶¶ 9, 10, 12, 13, 14, 15, 17, 18, 19; Defendant's Reply Memorandum, p. 5. "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. " Fed. R. Civ. P. 56(e). Instead, the Defendant "must set forth specific facts showing that there is a genuine issue for trial." *Id.*

Among the statements of which Seating complains is Mr. Kostinden's assertion, based on his personal knowledge, that "Seating never submitted insurance certificates in their own name." Affidavit of Kostinden, ¶ 12. This is clearly an assertion of undisputed fact and not a legal conclusion, as Seating either did, or did not, submit insurance certificates in its own name, regardless of whether Seating felt that it was obligated to do so. *Id.* Mr. Kostinden has knowledge that Seating signed and returned marked-up contracts (*See* Exs. 15 & 16), which included requirements that Seating include on its submitted insurance certificates descriptions of the Projects, proof of insurance coverage in Massachusetts, a hold-harmless agreement, and the

names of the Owners, Architects, and TLT as additional insureds. *Id.,* Exs. 15A, 16A; Affidavit of Kostinden, ¶ 10. Mr. Kostinden has personal knowledge that Seating did not include those items on the insurance

certificates that it submitted. Affidavit of Kostinden, ¶ 10.

Seating sent correspondence stating that bonds would be provided by Outdoor Aluminum and paid for by TLT (Exs. 16A, 20), and Mr. Kostinden states that TLT agreed with this arrangement. Affidavit of Kostinden, ¶ 13. Further, Mr. Kostinden contends that the contracts signed by Seating did "specifically incorporate by reference" the General Conditions of TLT's contracts with the Owners (*Id.*, ¶ 9); that TLT requested that Seating follow the terms of the contracts it signed (*Id.*, ¶ 14); that Seating continued to raise issues such as union labor rates and insurance that were settled (*Id.*, ¶ 15); that the Reading Project work required the use of an I-beam (*Id.*, ¶ 17); that Seating attempted to increase the price of $480,000 and to change the terms of payment from the terms in the signed contracts (*Id.*, ¶ 18); and that Seating resisted and denied TLT's assertions that contract terms were agreed upon (*Id.*, ¶ 19). These are facts stipulated by Mr. Kostinden, and reflect his personal knowledge as well as the verified documents, regardless of Seating's position as to the formation of contracts. Affidavit of Kostinden, ¶¶ 9, 10, 12, 13, 14, 15, 17, 18, 19; Fed. R. Civ. P. 56(e).

## **CONCLUSION**

Wherefore, TLT requests that the court decide this case on the undisputed verified record before it and grant TLT's cross-motion for summary judgment.

                                        TLT CONSTRUCTION CORP.,
                                        By its Attorneys,

                                        s/ Patrick J. Sullivan
Dated: __08-05-05___                      Patrick J. Sullivan, Esq., BBO# 548752
                                        James G. Grillo, Esq., BBO# 638730
                                        HEAFITZ & SULLIVAN
                                        56 Chestnut Hill Avenue
                                        Boston, MA 02135
                                        (617) 562-1000