UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| TLT CONSTRUCTION CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 05-10223-LTS |
| RI, INC., d/b/a SEATING SOLUTIONS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## JOINT PRETRIAL MEMORANDUM

RI, Inc., d/b/a Seating Solutions ("Seating") and TLT Construction Corp. ("TLT" or "Plaintiff") hereby submit this Joint Pretrial Memorandum:

**I.    Concise Statement of Evidence Offered**

**A.    TLT**

The Court previously allowed TLT's Motion for Summary Judgment as to Count I of TLT's Complaint, finding that TLT is entitled to $34,160 in damages for breach of contract.  See this Court's Order of December 28, 2005 and TLT's Cross-motion for Summary Judgment. TLT expects the evidence will show that the Defendant intentionally engaged in conduct violative of M.G.L. c. 93A, §11 which entitles TLT to multiple damages and legal fees as mandated by law. In sum, after signing the contracts in issue  (which formed the basis of this Court's finding on summary judgment that Seating was in breach of its contractual obligations), Seating, through its agent Mr. Marc Ligator, attempted to extort further monetary concessions from TLT as it delayed performance of its contractual duties.  Through these delays, Seating knowing and willfully put TLT, under a tight time constraint to complete its work under general contracts with

the towns of Reading and Holden.  Seating thereby intentionally put TLT into a more difficult and weaker position and Seating preyed on this opportunity to leverage TLT and wrongfully attempt to extort a higher price than agreed.  Seating's delay in performance of the contract work and attempts to increase the contract price show that they were using the delays as leverage in order to extort further concessions on the part of TLT.  See e.g., Pepsi-Cola Metro. Bottling Co., Inc. v. Checkers, Inc., 754 F.2d 10, 17019 (1st Cir. (Mass.) 1985); Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474 (1991; Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 54-55 (1st Cir. (Mass.) 1998). After signing contracts and forcing TLT to rely on Seating's ability to perform the contract work in a timely and satisfactory manner, Seating unfairly and deceptively ventured to coerce better terms, in clear violation of Chapter 93A's prohibition against parties engaging in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade and commerce." M.G.L. c. 93A § 2.  It is this conduct which TLT submits is the "something more" which entitles it to damages under C. 93A. See Pepsi-Cola Metro. Bottling Co., Anthony's Pier Four, Inc., and Arthur D. Little, Inc. v. Dooyang Corp, supra.

As the Court has previously allowed TLT's Motion for Summary Judgment as to Count I of the Complaint, the base amount of C. 93A damages have been established as $34,160 as noted by C. 93A, §11.  See this Court's Order of December 28, 2005 on the Parties Cross-Motion for Summary Judgment, see also, M.G.L. c. 93A, §11(para. 5) ("For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence regardless of the existence or nonexistence of insurance coverage available in payment of the claim.").  TLT reserves its rights to produce a Fee Affidavit of Counsel as the Court my direct.

### B.    Seating Solutions

Seating Solutions will offer testimony from its personnel that they did not believe that they had reached an agreement with TLT.  They will state that, as such, they could not have willfully breached a contract that they did not know existed.  Similarly, Seating Solutions will offer testimony that it believed it was still engaged in contract negotiations and that not all essential terms had been finalized.  It was not, as TLT alleges, attempting to extort anything from anyone.  Seating Solutions will offer testimony that it did not finalize the contract with TLT – or did not believe it had finalized a contract – because it did not believe that the two companies would work well together.  Seating personnel made this determination based upon the difficulty of contract negotiations and statements made during those negotiations.  Finally, Seating Solutions disputes that TLT lost any money or property due to any of the unfair conduct that it alleges was undertaken by Seating Solutions.

## II.    Facts Established by Pleadings, Stipulations & Admissions

1.    TLT, a Massachusetts corporation with its principal office located in Wakefield Massachusetts, is a construction company that has worked on numerous large scale projects in Massachusetts since it was founded in 1976.

2.    Seating, a New York corporation based in Hauppauge, New York, is in the seating system design and construction industry and specializes in the sale, rental, and installation of custom-designed spectator seating at athletic and recreational facilities.

3.    TLT is the general contractor on construction projects relating to the renovation and expansion of high schools in Reading and Holden, Massachusetts (the "Projects").

4.    TLT submitted a bid to serve as the general contractor on a project to construct an addition to Wachusett Regional High School in Holden, Massachusetts (the "Wachusett Project")

on January 28, 2004.

5.     TLT's bid on the Wachusett Project was accepted by the owner, the Town of Holden.

6.     Other general contractors submitted bids on the Reading Memorial High School renovation project (the "Reading Project").

7.     TLT was one of the general contractors on this list.

8.     TLT submitted its bid on the Reading Project on April 6, 2004.

9.     TLT's bid on the Reading Project was accepted by the owner, the Reading School Committee.

10.     On April 5, 2004, Seating, representing that it "ha[d] worked closely with this architect and ha[d] helped them design this bleacher from the very first steps," sent a quote to TLT for the Reading project that was $396,548.87, or $425,120.30 with a fully closed welded deck.

11.     When Seating submitted its quote for the Reading project it was unaware that TLT had also been awarded the contract on the Wachusett Project.  TLT has no knowledge whether Seating was or was not aware of the status of the Wachusett Project.

12.     On May 10, 2004, TLT requested a quote for bleacher packages for <u>both</u> of the Projects and stated that the quote needed to be prepared by May 12, 2004.

13.     On May 12, 2004, Seating sent TLT a quote for the Projects for a total price of $567,678.00.

14.     In response, TLT informed Seating that the price of $567,678.00 was too high.

15.     On May 17, 2004, Seating sent TLT a quote stating the total price for both projects would be $480,000, but that the quote was contingent upon a letter of intent being

received on the following day and a standard AIA contract being executed by May 21, 2004.

16.    After receiving this quote, TLT responded by facsimile on the same day by stating that (i) it needed a cost breakdown for both projects; (ii) a bond was being offered by Seating's competitors; (iii) TLT was working on getting the "no retainage" request approved; and (iv) that a letter of intent would have to suffice and that a contract could not be executed in the tight timeframe.

17.    Seating sent TLT a letter in response stating that the cost of the Reading Project would be $283,026 delivered and installed, that the cost of the home bleacher for the Wachusett Project would be $159,283.00 delivered and installed, and that the cost of the visitor bleacher for the Wachusett Project would be $37,691.00 delivered and installed.  The total price quoted for both projects was therefore $480,000.00.  Seating also informed TLT that this pricing did not include a bond and that Seating would allow TLT two weeks to draw up and execute a contract before it had to change its pricing structure.

18.    On May 17, 2004, after receiving the letter described in Paragraph 17, TLT sent Seating a facsimile agreeing to total contract price of $480,000.00 for the Projects.  At approximately the same time, TLT sent Seating a facsimile stating that "[w]e have a deal if we can split the bond."

19.    On or about May 21, 2004, TLT sent Seating contracts for the Projects and requested that they be signed and returned within five days.

20.    On June 4, 2004, TLT contacted Seating and requested that Seating return signed copies of the contract, a certificate of insurance, and payment and performance bonds for the Reading Project.

21.    On June 21, 2004, TLT sent Seating a letter requesting that Seating submit a

schedule of values for the Reading project.

22.    Also on June 21, 2004, TLT sent a letter requesting that Seating return signed contracts and certificates of insurance to TLT.

23.    On June 22, 2004, Marc Ligator of Seating ("Ligator") sent Chris Cormier of TLT ("Cormier") a letter attaching the certificate of insurance and raising specific concerns regarding the retainage requirement in the contract sent by TLT, the time frame for submittals, whether TLT was requiring union labor on the Projects, and Seating's need for additional information in the General Contract so that it could be aware of the contract scope.

24.    On June 25, 2004, TLT sent Seating a letter notifying it of problems with the certificates of insurance that Seating provided for the Projects.

25.    On June 28, 2004, Ligator sent TLT a letter stating that Seating could not alter certain aspects of its insurance certificate and would have to charge TLT a higher price if TLT required an umbrella insurance policy.

26.    The following day, TLT responded to Ligator's letter stating that neither of the insurance issues would be a problem and requested that Seating mark up and return the contracts that it had.

27.    On or about July 5, 2004, Seating returned signed contracts for the Projects to TLT that (i) redacted provisions requiring Seating to obtain payment and performance bonds; (ii) added a provision stating that "Seating Solutions standard insurance limits apply to this contract"; (iii) added a provision stating that shop drawings would be received within six weeks of the execution of the contract; and (iv) deleted a provision requiring Seating to use union carpenters and apprentices.

28.    TLT never returned signed copies of the signed contracts.

29.     On July 12, 2004, Seating informed TLT that the total cost increase on the Projects that would result from the requirement that union labor be used would be $128,350.00 and stated that its factory would provide a bond with the cost passed on to TLT as an add-on to the contract.  TLT ultimately did not require Seating to use union labor.

30.     On July 21, 2004, TLT sent unmarked versions of the contracts to Seating for the Projects in response to a request from Seating Solutions same.

31.     Seating did not return signed copies of the contract draft sent on July 21, 2004.

32.     On July 29, 2004, TLT sent Seating another letter requesting that Seating return signed contracts and certificates of insurance to Seating.

33.     On August 13, 2004, Seating sent TLT a letter stating that while Wachusett Project pricing would remain the same, Seating would increase its delivered and assembled price for the Reading Project by $19,236.00 due to addenda to project specifications and the architect's insistence upon an I-Beam unit.

34.     On August 18, 2004, Seating provided TLT with a certificate of insurance for its supplier Outdoor Aluminum and stated that bonding would not be an issue.  The parties agreed that bonding was an extra to the contract that Seating would provide and TLT would pay for.

35.     On August 19, 2004, TLT stated that it did not believe that the price increase for I-Beam construction was justified because the original quotes provided by Seating included I-Beam units.

36.     On August 20, 2004, Seating responded by stating that existing specifications were vague and contradictory, and that in clarifying the inconsistencies, Seating determined that it needed to increase the contract price.

37.     On August 23, 2004, TLT sent Seating a letter stating that if it wished to increase

the contract price it should submit a request for a change order as per the contract documents. Seating never sought to avail itself of the change order provision set forth in the contract documents.

38.    Also on August 23, 2004, TLT sent Seating a letter stating that Seating had not met the insurance certificate requirements for the Projects.  Seating did not, at any time, submit certificates of insurance in its own name.

39.    On August 30, 2004, Seating contacted TLT and stated that it was withdrawing all quotes and proposals that it had provided up to that date.

40.    On September 7, 2004, TLT's counsel sent Seating a letter stating that refusal to proceed by Seating would be actionable.

41.    Ligator responded to TLT's counsel on September 14, 2004.  He stated that Seating would be happy to proceed based upon its "pre-bid" quote, which was higher than $480,000.00 for both projects.

42.    The parties resumed contact in October of 2004.

43.    On October 20, 2004, Seating sent TLT a letter stating that it would be willing to proceed on both projects for a total price of $488,043.00.

44.    On October 22, 2004, Matt Henry of TLT ("Henry") sent Ligator a letter requesting an explanation for the approximately eight thousand dollar increase in the price above the figure quoted by Seating in May of 2004.

45.    Ligator responded by stating that old pricing had expired and that the price quoted was based upon Seating's review of the Projects with current costs in mind.

46.    Later on October 22, 2004, Ligator sent a letter to TLT stating that Seating's pricing was based on using its own employees at prevailing wage and stating that if union labor

would be required it would be TLT's responsibility to absorb any cost increase that resulted.

47.    On October 26, 2004, Ligator requested that TLT send Article No. 2 of the general conditions of the contract between TLT and the Reading School Committee.

48.    TLT provided Seating with the requested information on October 27, 2004.

49.    On November 1, 2004, Ligator sent a letter to Kostinden stating that Seating needed a firm delivery date.  The letter stated that Seating would need a fifty percent deposit with a balance up to $450,000.00 due upon delivery of material.

50.    On December 1, 2004, TLT's counsel sent Ligator a letter representing that Ligator and Kostinden had reached a resolution on terms on November 9, 2004 and that Kostinden expected the contracts to be endorsed and returned together with bonds.

51.    On December 6, 2004, Ligator sent a facsimile to TLT's counsel again offering to honor any "pre-bid" proposal that it made to TLT, which was higher than $480,000.00 for both projects.

52.    On December 6, 2004, TLT's counsel sent Ligator a response requesting that he execute and forward contracts for both projects in the amount of $450,000.00, as well as providing payment and performance bonds.

53.    On December 15, 2004, Thomas Kostinden of TLT sent a facsimile to Marc Ligator of Seating demanding that Seating send signed contracts, insurance certificates, and performance and payment bonds to TLT.

54.    On December 17, 2004, Ligator responded and offered to meet with TLT in early January of 2005 to requote the project.

55.    The parties were unable to resolve their differences in early January.  Seating sent a letter on January 27, 2005 informing TLT that it would only perform the job for $580,000.00

and that "this is the best pricing you will see from someone who will complete a quality job."

III.    **Contested Issues of Fact**

The following issues of fact are contested by Seating Solutions:

1.      Whether Seating Solutions engaged in any unfair or deceptive conduct.

2.      Whether Seating Solutions or any of its employees knew that a contract existed between Seating and TLT.

3.      Whether TLT suffered any loss of money or property due to Seating Solutions' alleged unfair or deceptive conduct.

4.      The amount of TLT's damages.

IV.    **Jurisdictional Questions**

The parties agree that there are no jurisdictional questions.

V.     **Questions Raised by Pending Motions**

The parties have differing positions on whether Seating Solutions is entitled to take TLT's Fed. R. Civ. P. 30(b)(6) deposition.   They are requesting that the Court resolve this dispute at the pretrial conference.

A.      **TLT's position**

1.      This matter was commenced on or about December 27, 2004.

2.      Trial is scheduled for May 8, 2006.

3.      On or about April 3, 2006, Defendant first served deposition notice upon TLT.

4.      At no time prior thereto did Defendant make any effort to seek deposition testimony from any person or entity.

5.      In accord with an order issued by Judge Woodlock discovery was to be completed by July 30, 2005.  Exhibit A.

6.      On or about April 1, 2005, the parties submitted a joint statement pursuant to local Rule 16.1 which stipulated to all discovery being completed by September 30, 2005.  Exhibit B.

7.      On April 15, 2005, the matter was subsequently transferred to Judge Sorokin.  No new discovery orders have issued and the discovery stipulation that the parties entered into has not been altered.  However, a reasonableness test should dictate that Defendant not sit back for a year and then launch a deposition salvo on the eve of trial.

8.      On April 3, 2006, Defendant served a notice seeking to depose Plaintiff, TLT Construction Corp. on April 18, 2006.  Exhibit C.

9.      On April 11, 2006, Plaintiff notified Defendant that it was objecting to depositions out of time.  Exhibit D.

10.     On April 11, 2006, Defendant responded and reiterated request for depositions. Exhibit E.

11.     The underlying facts of the case have been largely developed by stipulation, are relatively straightforward and in substantial measure it is the legal significance of those facts as well as the mental impressions, legal opinions and conclusions of Plaintiff's counsel that are apparently driving the discovery concerns.  Given the dollars involved this case should proceed forward without the costs attendant to preparing for a deposition, attending same, paying stenographer bills, reviewing of transcript, etc.  In sum, it is reasonably anticipated that the time and expense is not at all warranted and will accomplish nothing more than to harass as well as annoy.

12.     To the extent Defendant requires documents Plaintiff will agree to cooperate as appropriate in order that Exhibits be marked as necessary for trial.  Likewise, to the extent Defendant would like to direct any inquiry to Plaintiff through counsel then Plaintiff's counsel

will agree to cooperate in reasonable manner if that is of assistance in focusing the trial proceedings as appropriate.

13.     In significant measure the arguments as raised by Defendant's April 11, 2006, correspondence (Exhibit E) in support of proceeding with depositions should be disregarded based on the record.  The parties entered into a contract (as found by the Court) and Plaintiff obviously sustained damages in Massachusetts.  Defendant's argument that Plaintiff must demonstrate damages independent of the costs to cover is a question of law that Plaintiff does not concur with as the costs to cover are the essence of the G.L. c. 93A damages in this matter.

14.     The President of TLT, Thomas V. Kostinden, who is most familiar with the facts in issue, is presently out of the country.  He is expected to attend to the press of business upon return and should not be distracted with depositions in this matter as the Court can take judicial notice that when most people return to their office after being away on extended stay the desk tends to have piles of files on it (inter alia).

15.     Given the timing and the press of trial in this matter as well as other commitments of counsel and the client prior thereto depositions are highly inconvenient and Defendant should be deemed to have waived same by not pursuing same in timely manner several months ago.

16.     The discovery should be deemed closed and the matter proceed towards trial as scheduled.

17.     The Court will recall that contrary to Defendant's assertions, TLT has not created any knew theory of the case, but simply presented the facts in light of the applicable case law to respond to Plaintiff's recent attempt to conduct a summary judgment on the eve of trial.  The record reflects that TLT did not add any new facts or affidavits (which the Court will recall the Defendant did do), but instead merely focused the Court on how the law applied to the facts as

previously established by the Court and the Parties in connection with the summary judgment application decided by the Court at the end of last year.

**B.    Seating's position**

**1.    The deposition is necessary to prevent trial by ambush**.  The trial scheduled for May 8, 2006 relates to whether Seating Solutions is liable to TLT under Mass. Gen. Law ch. 93A.  TLT's Chapter 93A claim is a moving target.  Until recently, TLT alleged that Seating Solutions sought to extract favorable concessions after the parties had entered into a contract.  In TLT's recent summary judgment submissions, it appears to have expanded its theory of the case.  TLT now alleges Seating made statements in New York that TLT acted upon in Massachusetts.  This looks like a misrepresentation claim, which would be new.  Indeed, the principal case TLT relied upon in its recent brief, *Charles River Data Sys., Inc. v. Oracle Complex Sys. Corp.*, 788 F. Supp. 54 (D. Mass. 1991), premises the possibility of Chapter 93A liability on an allegation of "fraudulent contract modification."  *Id.* at 60.  At the noticed deposition, Seating would examine TLT on the following issues:

- <u>The substance of TLT's Chapter 93A claim.</u>   If TLT is alleging that a misrepresentation occurred, Seating Solutions is entitled to know the substance of the misrepresentation, how TLT relied upon the misrepresentation, and the damages that TLT suffered due to the misrepresentation.

- <u>Evidence of willfulness.</u>  There is no evidence in the documentary record that Seating Solutions was aware of the existence of a contract.  If TLT has evidence of such knowledge other than the documents that it has produced, Seating Solutions is entitled to that evidence.

- <u>Money or property TLT lost due to the purported violation</u>.  In order to prevail under Chapter 93A, TLT must establish that the unfair conduct itself led to an independent loss of money of property.  That is, there must be some damages other than TLT's cost of cover.  There is no evidence of any such damages to date.  Indeed, TLT's failure to state them in its automatic disclosures may preclude from presenting testimony on that issue at trial.

- <u>TLT's damages generally.</u>  TLT has produced contracts indicating its expected cost of cover.  There is not tangible evidence, such as checks, showing what TLT paid for the bleachers less backcharges.

2.      **The lack of deadlines**.  There are no scheduling deadlines in effect in this case. TLT's reference to the scheduling order entered by Judge Woodlock is to no avail, because this case is not pending before Judge Woodlock.  Judge Woodlock entered that order before transferring this matter to this Court.  This Court did not establish any deadlines, other than those for filing of summary judgment briefs.  Seating Solutions sent the deposition notice to TLT less than a week after the Court denied Seating's motion for summary judgment on the Chapter 93A claim.  Allegations of waiver and delay are therefore without merit.

3.      **The lack of formal discovery to date.**  The parties have worked together well in this case.  Discovery has been unnecessary because the parties made voluntary disclosures that made discovery unnecessary.  As noted above, discovery is now necessary on the Chapter 93A claim because the basis for that claim is uncertain.

4.      **The burden of the deposition.**  The triable issues in this case are very narrow. Seating anticipates that the deposition will last – at the very most – three hours.  It will not hinder trial preparation.  The assertion that the deposition "will accomplish nothing more than to harass as well as annoy", *see* ¶ V.A.11 *supra*, is without merit and inconsistent with counsel's efforts to date.  Seating's counsel has persistently worked to keep costs down in this matter.  It was Seating's proposal, after all, to resolve the contract claim on summary judgment after a voluntary exchange of information.  The deposition at issue is critically important to permit Seating to understand the factual basis of the Chapter 93A claim and defend itself.

VI.     **Issues of Law and Evidence**

A.      **TLT**

TLT submits that question before the Court is whether the conduct of the Defendant as outlined briefly herein in Section I above is violative of C. 93A, §§2 and 11.  TLT believes that

based upon the applicable case law, it is clear that Seating unlawfully sought to extract concessions from TLT in violation of said statute, entitled TLT to damages thereon.  See e.g., Pepsi-Cola Metro. Bottling Co., Inc. v. Checkers, Inc., 754 F.2d 10, 17019 (1st Cir. (Mass.) 1985); Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474 (1991; Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 54-55 (1st Cir. (Mass.) 1998.

### B.    Seating Solutions

Seating Solutions suggests that the following issues of law exist in this case:

**1.    Whether its conduct was unfair or deceptive as a matter of law.**  A breach of contract itself is not a violation of Chapter 93A.  *See Chambers Steel Engraving Corp. v. Tambrands, Inc.*, 895 F.2d 858, 861 (1st Cir. 1990) ("The mere breach of a contract, without more, even if one existed, would not violate ch. 93A."); *Madan v. Royal Indem. Co.*, 26 Mass. App. Ct. 756, 762, 532 N.E.2d 1214, 1217 (1989) ("[T]he mere breach of a contract, without more, does not amount to a c. 93A violation."), *rev. denied*, 404 Mass. 1103, 536 N.E.2d 1093 (1989); Michael C. Gilleran, *The Law of Chapter 93A* § 9.1 at 227 (1989) ("Where the nature of the breach constitutes a mere breach of contract, without more, such conduct will not constitute a 93A violation.").

A successful claim for intentional breach of contract requires more than TLT lets on. TLT is correct that "conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 474, 583 N.E.2d 806, 821 (1991) (emphasis supplied).  On the other hand, "Mere resistance to a just claim is not the stuff of c. 93A." *Boston Pilots v. Motor Vessel Midnight Gambler & E. Coast Excursions, Inc.*, 357 F.3d 129, 134 (1st Cir. 2004); *Framingham Auto Sales, Inc. v. Workers' Credit Union*, 41 Mass. App.

Ct. 416, 418, 671 N.E.2d 963, 965 (1996).

        **2.**       **Whether TLT has suffered any loss of money or property due to unfair or deceptive conduct.**  Section 11 of Chapter 93A requires that the plaintiff to claim that the unlawful conduct caused an *independent* loss of money or property.  *See Callahan v. Harvest Board International, Inc.*, 138 F. Supp. 2d 147, 167 (D. Mass. 2001) (holding that plaintiff cannot succeed on section 11 claim where alleged loss of money or property stemmed from separate breach of contract claim and was not attributable to unfair or deceptive act).  TLT has not alleged that it suffered a loss other than the cost of cover.  Expenditure of fees to bring a breach of contract suit, for example, is not the sort of loss of money or property protected by Section 11.  *Doering Equip. Co. v. John Deere Co.*, 61 Mass. App. Ct. 850, 858, 815 N.E.2d 234, 241 (2004) ("The expenditure . . . of attorney's fees [to bring suit to recover damages that are unrelated to the unfair act or practice] does not represent a loss of money or property within the meaning of c. 93A, § 11.").

        **3.**       **Lack of evidence of damages.**  To date, TLT has produced no admissible evidence of its actual damages.

**VII.**   **Requested Amendments to Pleadings**

        Other than this Court's Order of August 8, 2005 serving to correct misnomer of the Defendant (which was originally sued incorrectly as "Seating Solutions RI, Inc.,") the parties are not requesting any amendments to the pleadings submitted to the Court.

**VIII.**  **Probable Length of Trial**

        The parties agree that the trial should not last longer than two days.

**IX.**    **Witnesses**

       **A.**     **TLT**

TLT may call the following witnesses at trial:

1.    Thomas V. Kostinden, TLT Construction Corp.

2.    Matt Henry, TLT Construction Corp.

3.    Heidi Whalen, TLT Construction Corp.

4.    Chris Cormier, TLT Construction Corp.

5.    Chandler Suprina, Seating Solutions

6.    Christine Suprina, Seating Solutions

7.    Lisa Suprina, Seating Solutions

8.    Scott Suprina, Seating Solutions

9.    Marc Ligator, Seating Solutions

10.    Tynesha Everette, Seating Solutions

11.    Tim Gallivan, Gallivan Company

**B.    Seating Solutions**

Seating Solutions may call the following individuals as witness at trial, and reserves the

right to supplement this witness list upon reasonable notice to the Court and TLT:

1.    Marc Ligator
       Seating Solutions
       63 Oser Avenue
       Hauppauge, NY  11788
       (631) 845-0449

2.    Scott Suprina
       Seating Solutions
       63 Oser Avenue
       Hauppauge, NY  11788
       (631) 845-0449

3.    Tynesha Everette
       Seating Solutions
       63 Oser Avenue
       Hauppauge, NY  11788

(631) 845-0449

4.      Thomas Kostinden
        TLT Construction Corp.
        One Pope Street
        Wakefield, MA  01880
        (781) 438-4100

5.      Matt Henry
        TLT Construction Corp.
        One Pope Street
        Wakefield, MA  01880
        (781) 438-4100

6.      Heidi Whalen
        TLT Construction Corp.
        One Pope Street
        Wakefield, MA  01880
        (781) 438-4100

7.      Chris Cormier
        TLT Construction Corp.
        One Pope Street
        Wakefield, MA  01880
        (781) 438-4100

## XI.     Proposed exhibits

The parties agree to the authenticity and admissibility, with the exception of embedded hearsay under Fed. R. Evid. 805, of all exhibits submitted during summary judgment proceedings.  These exhibits, and perhaps several others, will be submitted in a binder entitled "Seating Solutions/TLT – Trial Exhibit Binder" at the pretrial conference.

## XII.    Positions on Remaining Objections to Evidence

The parties reserve the right to object to questions and testimony at trial.

Dated:  April 20, 2006

TLT CONSTRUCTION CORPORATION          RI, INC. d/b/a SEATING SOLUTIONS

By its attorneys,                                      By its attorney,


   /s/  Patrick J. Sullivan                           /s/  Terry Klein
HEAFITZ & SULLIVAN, LLP                      HENSHON PARKER VYADRO, P.C.
Patrick J. Sullivan, Esq., BBO# 548752        Terry Klein, BBO# 652052
56 Chestnut Hill Avenue                            84 State Street, Suite 760
Boston, Massachusetts  02135                     Boston, Massachusetts  02109
Telephone: (617) 562-1000                         Telephone: (617) 367-1800
Facsimile: (617) 562-0069                          Facsimile: (617) 507-6454

**1:05-cv-10223-LTS** TLT Construction Corp. v. Seating Solutions RI, Inc.,
Leo T. Sorokin, presiding
**Date filed:** 02/04/2005 **Date of last filing:** 03/28/2006

### Docket Information and Related Docket Entries
### Case 1:05-cv-10223-LTS Document 8

**Filed:**           04/15/2005
**Entered:**         04/15/2005
**Entered By:**      Michelle Rynne,
**Event Name(s):**   Scheduling Order
**Full Docket Text for Document 8:**
Judge Douglas P. Woodlock : ORDER entered. SCHEDULING ORDER: Discovery due by 7/30/2005.
Motions due by 10/30/2005.(Rynne, Michelle)

No Related Docket Entries

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/14/2006 09:21:04 | | | |
| **PACER Login:** | sl0085 | **Client Code:** | 6127 |
| **Description:** | Deadline/Hearings | **Search Criteria:** | 1:05-cv-10223-LTS |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____ )
                                        )
TLT CONSTRUCTION CORP.                  )
        Plaintiff                       )
                                        )
v.                                      )          CIVIL ACTION NO. 05-CV-10223-DPW
                                        )
SEATING SOLUTIONS RI, INC.              )
        Defendants                      )
_____ )

**JOINT STATEMENT PURSUANT TO LOCAL RULE 16.1**

Plaintiff, TLT Construction Corp. and Defendant, Seating Solutions RI, Inc. hereby

submit the following Joint Statement pursuant to the Court's Notice under date of February 23,

2005 and Local Rule 16.1(D) in connection with the initial scheduling conference to be held

before the Court on April 7, 2005:

I.      JOINT PROPOSED AGENDA

The Parties propose that the Court address the following topics:

A.  Joint Discovery Plan.

The Parties propose that the discovery plan set forth in Section II below here be entered

and adopted by the Court.

B.  Trial by Magistrate Judge/Alternative Dispute Resolution.

Plaintiff is amenable to both trial by Judge Magistrate and mediation through an ADR

program sponsored by the Federal District Court.

C.  Each party has undertaken to file separately the certification required by Local Rule

16.1(D)3.

1

II.     JOINT PROPOSED DISCOVERY PLAN

The Parties propose the following discovery plan:

A. Discovery Event                                    Discovery Completed

Written Discovery served                              June 30, 2005

Depositions                                           July 30, 2005

Experts Designated (as needed)                        August 30, 2005

All Discovery completed                               September 30, 2005

Motions for Summary Judgment filed by                 October 30, 2005

B. Discovery Event Limitations

The Parties agree that the number of discovery events shall be limited in accordance with

Local Rule 26.1(C) based on the information available at this time.  However, each party

reserves the right to seek additional discovery as allowed by Rule.


TLT CONSTRUCTION CORP.                        SEATING SOLUTIONS RI, INC.
By their Attorneys,                           By their Attorney,


s/ Patrick J. Sullivan                        s/Terry Klein
Patrick J. Sullivan, Esq.,  BBO# 548752       Terry Klein, Esq., BBO# 652052
James G. Grillo, Esq., BBO# 638730            Law Office of Terry Klein
Heafitz & Sullivan                            1558 Dorchester Avenue
56 Chestnut Hill Avenue                        Dorchester, MA 02122
Boston, MA 02135                               (617) 507-6454
(617) 562-1000                                 email: tklein@lawtk.com
email: info@hsconstructionlaw.com
Date: 4/01/05                                  Date: 3/31/05

**HENSHON PARKER VYADRO, P.C.**

*attorneys at law*

84 STATE STREET
SUITE 760
BOSTON MA 02109

P 617 367 1800
F 617 367 1877

www.hpvpc.com

Terry Klein
E-mail: tklein@hpvpc.com
Direct fax: (617) 507-6454

April 3, 2006

BY FACSIMILE AND FIRST CLASS MAIL

Patrick J. Sullivan, Esq.
Heafitz & Sullivan, LLP
56 Chestnut Hill Avenue
Boston, Massachusetts 02135
Facsimile: (617) 562-0069

Re:    **TLT Constr. Corp. v. RI Inc. d/b/a Seating Solutions**
       **D. Mass. Civil Action** No. 05-10223-LTS

Dear Mr. Sullivan:

Enclosed please find a notice of deposition pursuant to Fed. R. Civ. P. 30(b)(6) for TLT Construction Corporation. The date on the notice is April 18, 2006. Please let me know if this date does not work for you or your client and I will reschedule the deposition accordingly.

Feel free, as well, to contact me if you have any questions.

Very truly yours,

Terry Klein

Enclosure

RECEIVED
APR - 4 2006
HEAFITZ & SULLIVAN, LLP

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TLT CONSTRUCTION CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 05-10223-LTS |
| RI, INC., d/b/a SEATING SOLUTIONS ) | |
| ) | |
| Defendant. ) | |
| ) | |

## NOTICE OF RULE 30(B)(6) DEPOSITION

PLEASE TAKE NOTICE that at **10:00 a.m.** on **Tuesday, April 18, 2006** at **Henshon Parker Vyadro, P.C., 84 State Street, Ste. 760, Boston, Massachusetts 02109,** the defendant, RI, Inc. d/b/a Seating Solutions ("Seating"), by its attorney, Terry Klein, will take the deposition upon oral examination of the plaintiff, TLT Construction Corporation ("TLT"), by a person or persons designated by TLT, who consent(s) to testify on behalf of TLT, pursuant to rules 30(b)(6) of the Federal Rules of Civil Procedure, before a Notary Public in the Commonwealth of Massachusetts, or before some other officer authorized by law to administer oaths. The deposition will continue from day to day until completed.

The subject matters of the deposition, of which the person or persons so designated to testify shall have knowledge, are the following:

1. The factual basis for TLT's claim that Seating violated Mass. Gen. Law ch. 93A, §§ 2, 11 ("Chapter 93A").

2. If TLT claims that Seating acted unfairly, the factual basis for that claim.

3. If TLT claims that Seating acted deceptively, the factual basis for that claim.

4.     If TLT claims that it suffered a loss of money and/or property because Seating acted unfairly or deceptively, the factual basis for that claim.

5.     The amount of each separate item of alleged damages that TLT suffered due to any act or omission on the part of Seating that forms the basis for the claims in the Complaint.

6.     The methodology used to calculate each separate item of alleged damages that TLT suffered due to any act or omission on the part of Seating that forms the basis for the claims in the Complaint.

7.     The nature of each separate item of alleged damage alleged damages that TLT suffered due to any act or omission on the part of Seating that forms the basis for the claims in the Complaint.

8.     The source and/or cause of each separate item of alleged damages that TLT suffered due to any act or omission on the part of Seating that forms the basis for the claims in the Complaint.

RI Inc. d/b/a SEATING SOLUTIONS

By its attorney,

HENSHON PARKER VYADRO, P.C.
Terry Klein, BBO# 652052
84 State Street, Suite 760
Boston, Massachusetts  02109
Telephone: (617) 367-1800
Facsimile: (617) 507-6454

Dated:  April 3, 2006

CERTIFICATE OF SERVICE

I, Terry Klein, hereby certify that on April 3, 2006, I served a copy of this document by facsimile and first class mail upon counsel for the plaintiff, Patrick J. Sullivan, Esq., Heafitz & Sullivan, 56 Chestnut Hill Avenue, Brighton, Massachusetts 02135.

Terry Klein

**HEAFITZ & SULLIVAN**
ATTORNEYS AT LAW
56 CHESTNUT HILL AVENUE
BOSTON, MASSACHUSETTS 02135
(617) 562-1000
FAX (617) 562-0069
www.hsconstructionlaw.com

HARVEY B. HEAFITZ
PATRICK J. SULLIVAN

JAMES G. GRILLO
CHRISTOPHER S. MALLOY

(OF COUNSEL)
PETER B. WOLK

April 11, 2006

Terry Klein, Esq.
Henshon Parker Vyadro, P.C.
84 State Street, Suite 760
Boston, MA 02109

**Re:** **TLT Construction Corp.**
**vs:** **Seating Solutions**
**Civil Action No. 05-CV-10223-DPW**

Dear Attorney Klein,

Please be advised that I am scheduled to commence trial on April 18, 2006. I also note that due to vacations scheduled at TLT and other commitments of this office as well as the client I do not think it reasonable or practical for your office to pursue depositions at this late date given that you made no effort to pursue any formal discovery prior hereto. In this regard you are referred to the scheduling deadlines as previously agreed to and as have been entered on the Court's docket. Moreover, the core facts of this case have essentially been developed in substantial measure by stipulation and the real issue is the ultimate legal consequences of same. Accordingly, we do not see what else will be accomplished by belated depositions but if there is something else you require then please let us know with specificity and we will endeavor to accommodate any reasonable request as appropriate. We request to be advised as to whether your office will agree to voluntarily withdraw the deposition notice and are taking a general reservation to seek a protective order on depositions out of time. In conclusion, given that your client resides out of state and cannot be required to submit to depositions in Boston, Massachusetts we suggest the balancing of the relative equities as well as the competing burdens at a time when the parties should be preparing to proceed towards trial militates in favor of the parties being left where they are at this time in respect to further formal discovery.

Thank you for your time and attention to this matter.

Very truly yours,

Patrick J. Sullivan
PJS/jc
cc:    TLT Construction Corp.

■   ■   ■   ■

HENSHON PARKER VYADRO, P.C.
attorneys at law

84 State Street
Suite 760
Boston MA 02109

P 617 367 1800
F 617 367 1877

www.hpvpc.com

Terry Klein
E-mail: tklein@hpvpc.com
Direct fax: (617) 507-6454

April 11, 2006

<u>BY FACSIMILE AND FIRST CLASS MAIL</u>

Patrick J. Sullivan, Esq.
Heafitz & Sullivan, LLP
56 Chestnut Hill Avenue
Boston, Massachusetts 02135
<u>Facsimile</u>: (617) 562-0069

**Re:    TLT Constr. Corp. v. RI Inc. d/b/a Seating Solutions
D. Mass. Civil Action No. 05-10223-LTS**

Dear Pat:

Thank you for your letter dated April 11, 2006. I do not intend to withdraw the notice of deposition. Your letter raises some important issues. I respond to them in turn.

**1. The purpose of the deposition**

The trial scheduled for May 8, 2006 relates to whether Seating Solutions is liable to your client under Mass. Gen. Law ch. 93A. TLT's Chapter 93A claim is a moving target. Until recently, TLT alleged that Seating Solutions sought to extract favorable concessions after the parties had entered into a contract. In TLT's recent summary judgment submissions, it appears to have expanded its theory of the case. TLT now alleges Seating made statements in New York that TLT acted upon in Massachusetts. This looks like a misrepresentation claim, which would be new. At the noticed deposition, I intend to examine your client on the following issues:

- **The substance of your client's Chapter 93A claim.** If your client is alleging that a misrepresentation occurred, Seating Solutions is entitled to know the substance of the misrepresentation, how TLT relied upon the misrepresentation, and the damages that TLT suffered due to the misrepresentation.

- **Evidence of willfulness.** There is no evidence in the documentary record that Seating Solutions was aware of the existence of a contract. If TLT has evidence of such knowledge other than the documents that it has produced, Seating Solutions is entitled to that evidence.

2

- **Money or property TLT lost due to the purported violation.** In order to prevail under Chapter 93A, TLT must establish that the unfair conduct itself led to an independent loss of money of property. That is, there must be some damages other than TLT's cost of cover. I have seen no evidence of any such damages to date. Indeed, TLT's failure to state them in its automatic disclosures may preclude from presenting testimony on that issue at trial.

- **TLT's damages generally.** TLT has produced contracts indicating its expected cost of cover. I have not seen tangible evidence, such as checks, showing what TLT paid for the bleachers less backcharges.

## 2. The existence of scheduling deadlines

There are no scheduling deadlines in effect in this case. Your reference to the scheduling order entered by Judge Woodlock is to no avail, because this case is not pending before Judge Woodlock. Judge Woodlock entered that order before transferring this matter to Judge Sorokin. Judge Sorokin did not establish any deadlines, other than those for filing of summary judgment briefs. I sent the deposition notice to you less than a week after Judge Sorokin denied Seating's motion for summary judgment on the Chapter 93A claim. You will recall, as well, that during this intervening period we were discussing the possibility of settlement. I only sent the notice out once it became clear that settlement of this case is unlikely.

## 3. The lack of formal discovery to date

We have worked together well in this case. We have not had to take discovery because we have each made voluntary disclosures that made discovery unnecessary. As noted above, discovery is necessary on the Chapter 93A claim because the basis for that claim remains uncertain.

## 4. Availability of Seating Solutions

Seating Solutions is a New York corporation. If you issue a Rule 30(b)(6) deposition notice for Seating, though, I assure you that my client would agree to travel to Boston.

## 5. The burden of the deposition

The triable issues in this case are very narrow. I anticipate that the deposition will last – at the very most – three hours. It will not hinder trial preparation. You are quite aware, moreover, that I have done everything possible to keep costs down in this case. It was my idea, after all, to deal with the contract issue on summary judgment based upon stipulated facts. As for scheduling, we have not had difficulty resolving those types of issues in the past. If your trial looks like it will go on the 18th, then I will obviously agree to reschedule.

I am happy to discuss this with you further. I urge you, though, to reconsider your decision to seek a protective order. Preparation and argument of motions and oppositions will take longer than the deposition itself. Our clients may disagree about the merits, but they agree, I think, that

3

reaching a final determination of those merits should be accomplished as cost-effectively as possible.

Very truly yours,

Terry Klein