UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TLT CONSTRUCTION CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 05-10223-LTS |
| RI, INC., d/b/a SEATING SOLUTIONS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REQUESTED FINDINGS OF FACT AND RULINGS OF LAW SUBMITTED ON BEHALF OF THE PLAINTIFF, TLT CONSTRUCTION CORP.

Now comes the Plaintiff TLT Construction Corp. ("TLT" or "Plaintiff") and hereby submits the following requested findings of fact and rulings of law for the Court's consideration in connection with the trial of this matter presently scheduled for May 8, 2006:

**I.      Requested Findings of Fact as stipulated to by the Parties as part of the Joint PreTrial Memorandum (see Section II, page 3):**

1.      TLT Construction Corp. hereby adopts the stipulated Facts as set forth in the Joint PreTrial Memorandum starting at page 3, as if set forth fully herein.

2.      Further, TLT would direct the Court to the following specific stipulated Facts which TLT submits are particularly germane to the C. 93A claim remaining before the Court for trial (TLT has kept the numbers the same as in the Memorandum for ease of reference):

10.      On April 5, 2004, Seating, representing that it "ha[d] worked closely with this architect and ha[d] helped them design this bleacher from the very first steps," sent a quote to TLT for the Reading project that was $396,548.87, or $425,120.30 with a fully closed welded deck.

18.     On May 17, 2004, after receiving the letter described in Paragraph 17, TLT sent Seating a facsimile agreeing to total contract price of $480,000.00 for the Projects.

27.     On or about July 5, 2004, Seating returned signed contracts for the Projects to TLT that (i) redacted provisions requiring Seating to obtain payment and performance bonds; (ii) added a provision stating that "Seating Solutions standard insurance limits apply to this contract"; (iii) added a provision stating that shop drawings would be received within six weeks of the execution of the contract; and (iv) deleted a provision requiring Seating to use union carpenters and apprentices.

33.     On August 13, 2004, Seating sent TLT a letter stating that while Wachusett Project pricing would remain the same, Seating would increase its delivered and assembled price for the Reading Project by $19,236.00 due to addenda to project specifications and the architect's insistence upon an I-Beam unit.

35.     On August 19, 2004, TLT stated that it did not believe that the price increase for I-Beam construction was justified because the original quotes provided by Seating included I-Beam units.

36.     On August 20, 2004, Seating responded by stating that existing specifications were vague and contradictory, and that in clarifying the inconsistencies, Seating determined that it needed to increase the contract price.

37.     On August 23, 2004, TLT sent Seating a letter stating that if it wished to increase the contract price it should submit a request for a change order as per the contract documents. Seating never sought to avail itself of the change order provision set forth in the contract documents.

38.     Also on August 23, 2004, TLT sent Seating a letter stating that Seating had not

met the insurance certificate requirements for the Projects.  Seating did not, at any time, submit certificates of insurance in its own name.

39.     On August 30, 2004, Seating contacted TLT and stated that it was withdrawing all quotes and proposals that it had provided up to that date.

40.     On September 7, 2004, TLT's counsel sent Seating a letter stating that refusal to proceed by Seating would be actionable.

41.     Ligator responded to TLT's counsel on September 14, 2004.  He stated that Seating would be happy to proceed based upon its "pre-bid" quote, which was higher than $480,000.00 for both projects.

43.     On October 20, 2004, Seating sent TLT a letter stating that it would be willing to proceed on both projects for a total price of $488,043.00.

44.     On October 22, 2004, Matt Henry of TLT ("Henry") sent Ligator a letter requesting an explanation for the approximately eight thousand dollar increase in the price above the figure quoted by Seating in May of 2004.

45.     Ligator responded by stating that old pricing had expired and that the price quoted was based upon Seating's review of the Projects with current costs in mind.

49.     On November 1, 2004, Ligator sent a letter to Kostinden stating that Seating needed a firm delivery date.  The letter stated that Seating would need a fifty percent deposit with a balance up to $450,000.00 due upon delivery of material.

50.     On December 1, 2004, TLT's counsel sent Ligator a letter representing that Ligator and Kostinden had reached a resolution on terms on November 9, 2004 and that Kostinden expected the contracts to be endorsed and returned together with bonds.

51.     On December 6, 2004, Ligator sent a facsimile to TLT's counsel again offering to

honor any "pre-bid" proposal that it made to TLT, which was higher than $480,000.00 for both projects.

52.     On December 6, 2004, TLT's counsel sent Ligator a response requesting that he execute and forward contracts for both projects in the amount of $450,000.00, as well as providing payment and performance bonds.

53.     On December 15, 2004, Thomas Kostinden of TLT sent a facsimile to Marc Ligator of Seating demanding that Seating send signed contracts, insurance certificates, and performance and payment bonds to TLT.

54.     On December 17, 2004, Ligator responded and offered to meet with TLT in early January of 2005 to requote the project.

55.     The parties were unable to resolve their differences in early January.  Seating sent a letter on January 27, 2005 informing TLT that it would only perform the job for $580,000.00 and that "this is the best pricing you will see from someone who will complete a quality job."

II.     **Additional Findings of Fact sought by Plaintiff, TLT Construction Corp.:**

1.     TLT is entitled to $34,160 in damages for breach of contract as to Count I of TLT's Complaint.  See this Court's Order of December 28, 2005 and TLT's Cross-motion for Summary Judgment.

2.     The Defendant intentionally engaged in conduct violative of M.G.L. c. 93A, §11

3.     After signing the contracts in issue  (which formed the basis of this Court's finding on summary judgment that Seating was in breach of its contractual obligations), Seating, through its agent Mr. Marc Ligator, attempted to extort further monetary concessions from TLT as it delayed performance of its contractual duties.

4.     Through these delays, Seating knowing and willfully put TLT, under a tight time

constraint to complete its work under general contracts with the towns of Reading and Holden.

5.      Seating thereby intentionally put TLT into a more difficult and weaker position and Seating preyed on this opportunity to leverage TLT and wrongfully attempt to extort a higher price than agreed.

6.      Seating's delay in performance of the contract work and attempts to increase the contract price show that they were using the delays as leverage in order to extort further concessions on the part of TLT.

7.      After signing contracts and forcing TLT to rely on Seating's ability to perform the contract work in a timely and satisfactory manner, Seating unfairly and deceptively ventured to coerce better terms.

8.      The damages sought by TLT, the $34,160, represent the difference between the amount of the contracts which it entered into with Seating and the contracts which it was ultimately forced to enter into with a new contractor to perform the work in question when Seating refused to perform said work.

9.      The $34,160 breach of contract damages suffered by TLT are a direct result of Seating's wrongful conduct as noted above herein.

10.     TLT is entitled to multiple damages and legal fees pursuant to the mandate of M.G.L. c. 93A, §11.

**III.     Requested Rulings of Law:**

1.      The general rule for breach of contract damages is well-established: "[t]he injured party shall be placed in the same position he would have been in if the contract had been performed, so far as the loss may be ascertained to have followed as a natural consequence of the breach and to have been in the contemplation of the parties as reasonable men as a probable

result of the breach." <u>Abrams v. Reynolds Metals Co.</u>, 340 Mass. 704, 708-709 (1960).

3.    A "party standing in breach cannot insist on mathematical precision in the measurement of damages, and may expect some lack of sympathy when he claims that the loss would have been suffered even if breach had not occurred." <u>Gilmore v. Century Bank & Trust Co.</u>, 20 Mass.App.Ct. 49, 55 (1985).

4.    "Damages cannot be assessed upon conjecture or surmise . . . but by the same token the reasonable prospect of damages . . . should not be defeated by conjecture or surmise, either. The plaintiff's burden is not to demonstrate its damages with mathematical certainty but only to a "fair degree of certainty." " <u>Jetpac Group, Ltd. v. Bostek, Inc.</u>, 942 F.Supp. 716, 720-721 (D.Mass.,1996) (<u>quoting</u> <u>Hendricks & Assocs. v. Daewoo Corp.</u>, 923 F.2d 209, 217 (1st Cir.1991)).

5.    "Chapter 93A 'was designed to encourage more equitable behavior in the marketplace . . . and impose liability on persons seeking to profit from unfair practices.' " <u>Linkage Corp. v. Trustees of Boston Univ.</u>, 425 Mass. 1, 25 (1997) (citations omitted).

6.    C. 93A creates "broad new rights, forbidding conduct not previously unlawful under the common law of contract and tort or under any prior statute." <u>Dodd v. Comercial Union Ins. Co.</u>, 373 Mass. 72, 78 (1977)**.**

7.    "A determination that conduct is unfair or deceptive is not dependent on traditional tort or contract theories and represents a finding under a statute that creates new substantive rights." <u>Linkage Corp.</u>, 425 Mass. at 27 (citations omitted).

8.    The inquiry focuses on the nature of challenged conduct and on the purpose and effect of that conduct as the crucial factors in making a G. L. c. 93A fairness determination. <u>See PMP Assocs., Inc. v. Globe Newspaper Co.</u>, 366 Mass. 593, 596 (1975); <u>Massachusetts</u>

Employers Ins. Exchange v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995).

9.    "While it is correct that a breach of contract alone does not amount to an unfair act or practice under G. L. c. 93A, § 2, conduct undertaken as leverage to destroy the rights of another party to the agreement while the agreement is still in effect . . . has a coercive quality that, with the other facts, warranted a finding of unfair acts or practices [under C. 93A]." Massachusetts Employers Ins. Exchange v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995) (citations omitted).

10.    "Conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes." Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474, 583 N.E.2d 806, 821 (1991).

11.    "Every contract implies good faith and fair dealing between the parties to it." Anthony's Pier Four, Inc. v. HBC Assoc., 411 Mass. 451, 471 (1991).

12.    "[A] breach of the covenant [of good faith and fair dealing] amount[s] to a violation of Mass.Gen.L. ch. 93A, § 11." Desmond v FDIC, 798 F.Supp. 829, 842-43 (D.Mass. 1992) (citing Anthony's Pier Four, Inc. v. HBC Assoc., 411 Mass. 451, 471-72, (1991)).

13.    Withholding of performance due on account in an effort to wrongfully leverage a dispute is a form of extortion proscribed by M.G.L. c. 93A, § 11.  See Pepsi-Cola Metro. Bottling Co., Inc. v. Checkers, 754 F.2d 10, 12 (1st Cir. 1985) (The Court of Appeals upheld a lower Court's finding of a C. 93A violation where Defendant "withheld monies which they legally owed as a form of extortion to force [Plaintiff] to do what otherwise it could not be legally required to do).

14.    "Multiple damages [pursuant to M.G.L. c. 93A, §11] are "the appropriate punishment" for forcing plaintiffs to litigate clearly valid claims."  International Fidelity Ins. Co.

v. Wilson, 387 Mass. 841, 857 (1983) (quoting  Heller v. Silverbranch Constr. Corp., 376 Mass. 621,  628 (1978)).

15.    When viewed as a whole, where "the pattern of Defendant's conduct  . . . exhibit[s] an extortionate quality" in a "willful effort to impair [Plaintiff's] right to receive the benefits of its contract", it is appropriate to find a C. 93A violation.  Community Builders v. Indian Motocycle Assocs., 44 Mass. App. Ct. 537, 559 (1998).

16.    The loss of money, such as where a party is forced to hire a new contractor because a defendant refuses to perform its contract, represents a true injury and is sufficiently related to that Defendant's wrongful conduct in willfully and wrongfully refusing to perform, to entitled a Plaintiff to a findings that the Defendant violated M.G.L. c. 93A, §11.  Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 56-57 (1st Cir. (Mass.) 1998)

17.    "For the purposes of [M.G.L. c. 93A, §11], the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence regardless of the existence or nonexistence of insurance coverage available in payment of the claim."  M.G.L. c. 93A, §11 (para. 5).


TLT CONSTRUCTION CORP.
By its attorneys,


   /s/   Patrick J. Sullivan_____
HEAFITZ & SULLIVAN, LLP
Patrick J. Sullivan, Esq., BBO# 548752
James G. Grillo, Esq., BBO 638730
56 Chestnut Hill Avenue
Boston, Massachusetts  02135
Telephone: (617) 562-1000
Facsimile: (617) 562-0069