UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TLT CONSTRUCTION CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 05-10223-LTS |
| RI, INC. d/b/a SEATING SOLUTIONS | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND
RECONSIDERATION OF SUMMARY JUDGMENT RULINGS**

RI, Inc., d/b/a Seating Solutions ("Seating" or "Seating Solutions") moves for judgment as a matter of law under Fed. R. Civ. P. 52(c). The plaintiff, TLT Construction Corp. ("TLT"), has not introduced evidence that Seating's conduct was unfair or deceptive. TLT has not introduced evidence that the supposed unfair conduct caused a loss of money or property, either. Additionally, Seating Solutions requests that the Court reconsider its earlier summary judgment decisions that (i) TLT and Seating Solutions had a contract; and (ii) the claimed unfair conduct occurred primarily and substantially in Massachusetts. As further grounds for this motion, Seating Solutions relies upon and incorporates the facts and law set forth in Defendant's Proposed Findings of Fact and Conclusions of Law, and states as follows:

A.      **TLT's Chapter 93A claim fails as a matter of law.**

1.      TLT has not established that Seating Solutions personnel knew there was a contract. TLT has also not established that Seating Solutions had an extortionate purpose in seeking a price increase for work on the Reading and Wachusett projects (the "Projects). Without this evidence, TLT's Chapter 93A claim cannot succeed. *See Boston Pilots v. Motor Vessel Midnight Gambler & E. Coast Excursions, Inc.*, 357 F.3d 129, 134 (1st Cir. 2004).

2.      TLT has not introduced evidence that it suffered a loss of money or property

separate from its contract damages.  Without evidence of a distinct loss of money or property, TLT cannot succeed on its Chapter 93A claim.  *See Lyle Richards, Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d 111, 115 (1st Cir. 1997).

3.      Seating Solutions requests that the Court reconsider its earlier determination that the alleged conduct occurred primarily and substantially in Massachusetts.[1]  In reaching this conclusion, the Court relied largely on *Charles River Data Sys., Inc. v. Oracle Complex Sys. Corp.*, 788 F. Supp. 54 (D. Mass. 1991).  The *Charles River* case is distinguishable.  That case premised the possibility of Chapter 93A liability on an allegation of "fraudulent contract modification."  *Id.* at 60.  Thus, there was an allegation of statements directed to and relied upon by businesspeople in Massachusetts.  An extortion claim is different; the conduct occurs in the geographic location of the party seeking an unfair advantage.  *See Goldstein Oil Co. v. C.K. Smith Co., Inc.*, 20 Mass. App. Ct. 243, 249-50, 479 N.E.2d 728, 732 (1985), *rev. denied*, 395 Mass. 1104, 462 N.E.2d 328 (1985).  Claiming that an injury occurred in Massachusetts, moreover, is not enough.  *See Garshman Co., Ltd. v. General Elec. Co.*, 176 F.3d 1, 7 (1st Cir. 1999).  Seating Solutions has not located precedent for the proposition that if a businessperson located outside of Massachusetts intentionally breaches a contract to be performed in Massachusetts, there is Chapter 93A jurisdiction.

**B.      Seating Solutions requests that the Court reconsider its determination that the parties had a contract.**

4.      On December 29, 2005, this Court denied Seating Solutions' motion for summary judgment and allowed TLT's cross motion.  There is sufficient evidence for the Court to revisit that determination.

---

[1] The Court may revisit earlier legal and factual conclusions it reached in ruling upon the parties' summary judgment motions.  *Alberty-Velez v. Corporacion de Puerto Rico Para La Difusion Publica*, 361 F.3d 1, 6 n.5 (1st Cir. 2004) ("A district court retains jurisdiction to modify a Rule 56(d) order at any time.") (internal punctuation marks omitted); *F.D.I.C. v. Massingill*, 24 F.3d 768, 774 (5th Cir. 1994) "A partial summary judgment order in accordance with Rule 56(d) is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case. Such an order is interlocutory in nature, is subject to revision by the district court, and has no *res judicata* effect.").

5.      Where a conflict regarding a material contract term remains unresolved, no agreement exists.  *See Mass Cash Register, Inc. v. Comtrex Sys. Corp.*, 901 F. Supp. 404, 418 (D. Mass. 1995) ("[T]he parties' failure to agree on material terms militates against the finding of a contract.").  Similarly, where the parties contemplate entering into a written agreement but have not done so, there is a reasonable inference that they do not intend to be bound.  *Gel Sys. Inc. v. Hyundai Eng'g & Constr. Co., Inc.*, 902 F.2d 1024, 1027 (1st Cir. 1990) ("Normally the fact that parties contemplate the execution of a final written agreement effects a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled.").

6.      Pricing and bonding were essential terms in this case.  On August 18, 2004, the parties reached an apparent resolution of how and whether to bond Seating's work.  Trial Ex. 20. On August 13, 2004, however, Seating sought a price increase.  Trial Ex. 19.  TLT refused to increase the contract price.  Pricing was therefore unresolved on August 13, 2004 and remained unresolved five days later when Seating and TLT agreed on bonding.  With pricing unresolved, there was no contract.  *See Mass Cash Register, Inc. v. Comtrex Sys. Corp.*, 901 F. Supp. at 418. TLT may question the basis for the price increase, but there is no generalized duty to haggle in good faith.  *See F.D.I.C. v. LeBlanc,* 85 F.3d 815, 822 (1st Cir. 1996); *Schwanbeck v. Federal-Mogul Corp.*, 412 Mass. 703, 707 (1992).

7.      Relatedly, neither party executed a contract including terms to which the other agreed.  Seating Solutions executed paperwork on July 5, 2004, deleting five separate provisions to which it would not agree.  Trial Exs. 15 & 16.  TLT did not execute this paperwork.  Instead it returned unsigned paperwork on July 21, 2004, making just one of Seating's five requested changes.  Trial Exs. 17 & 39.  From that date forward, the parties exchanged no additional drafts and did not sign any of the paperwork.  The exchange of drafts and Mr. Kostinden's signature on the marked-up Gallivan contracts, Trial Exs. 44-45, signal that a signed, written agreement was a prerequisite to a final deal.  *See Gel Sys. Inc.*, 902 F.2d 1024 at 1027.

WHEREFORE, Seating Solutions respectfully requests that the Court:

(i) Enter a verdict in its favor on TLT's Chapter 93a claim;

(ii) Reconsider its previous summary judgment rulings and enter a verdict in its favor on

TLT's breach of contract claim; and

(iii) grant such other relief as it considers proper under the circumstances.


Respectfully Submitted,

RI Inc. d/b/a SEATING SOLUTIONS

By its attorney,


_____/s/_____ Terry Klein
HENSHON PARKER VYADRO, P.C.
Terry Klein, BBO# 652052
84 State Street, Suite 760
Boston, Massachusetts  02109
Telephone: (617) 367-1800
Facsimile: (617) 507-6454

Dated:  May 9, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on or before May 9, 2006.

_____/s/_____ Terry Klein