UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TLT CONSTRUCTION CORP., ) | |
|     Plaintiff, ) | |
| ) | |
|         v. ) | CIVIL ACTION |
| ) | NO. 05-10223-LTS |
| SEATING SOLUTIONS RI, INC., ) | |
|     Defendant. ) | |
| ) | |

MEMORANDUM OF DECISION ON TRIAL

June 2, 2006

SOROKIN, M. J.

This matter came before the Court for trial on Count IV, which alleged violations of

M.G.L. c.93A §§ 2 and 11 ("c.93A"). The Court previously granted Summary Judgment for

Plaintiff on it's breach of contract claim (Count I). Order Granting Summary Judgment,

December 28, 2005 (Docket No. 28) ("Order on Contract Claims"). Following a one-day trial on

the c.93A claim, I make the following findings of fact and rulings of law.

FINDINGS OF FACT AND RULINGS OF LAW

I adopt the undisputed "Facts Established by Pleadings, Stipulations and Admissions," as

agreed and set out by the parties in their Joint Pre-Trial Memorandum at pgs. 3-10 (Docket No.

35)(hereinafter "Joint Pre-Trial Memorandum"). Still in dispute are: (1) whether Seating knew

that the parties had a contract; (2) the amount of TLT's contract damages; (3) whether Seating

engaged in any unfair and/or deceptive conduct; and (4) whether TLT lost any money or property

as a result of Seating's alleged unfair and/or deceptive conduct and if so, the amount of such loss.

      A.    Defendant's Motion to Reconsider Entry of Summary Judgment on Count I
           (Breach of Contract).

At trial, at the close of Plaintiff's case in chief, Defendant filed Motions For

Reconsideration of Summary Judgment Rulings along with a Motion for Judgment as a Matter of

Law (Docket No. 38). I DENY the Motion to Reconsider as to the breach of contract claim.

Although a "federal court has the discretion to reconsider interlocutory orders and revise

or amend them at any time prior to final judgment," I decline to exercise that discretion here.

Davis v. Lehane, 89 F. Supp. 2d 142, 147 (D. Mass.2000)(citing Fed. R. Civ. P. 54(b)). First,

despite many opportunities, Defendant did not provide Plaintiff or the Court with any notice that

it would be contesting the Court's Order on the contract claim at trial. Indeed, Defendant did not

state that it would be contesting its liability on the breach of contract claim in the Joint Pre-Trial

Memorandum in which the parties were required to list the "contested issues of fact" and "issues

of law," as well as "any additional matters to aid in the disposition of the action" for trial. LR

16.5 (D). Nor did Defendant file, or declare its intention to file, such a Motion at the Final Status

Conference on April 25, 2006, which conference calls for "a final and binding definition of the

issues to be tried." LR 16.5 (E). In fact, Defendant did not file its Motion until Plaintiff had

closed its case in chief during the trial of the c.93A claim only. Under these circumstances, it is

unfair to reverse the ruling and enter judgment in favor of Defendant. In light of the Court's

prior Order, the only claim that Plaintiff had to prove at trial was its c.93A claim. If the Court

allowed this Motion, therefore, Defendant would benefit from unfair surprise, as Plaintiff had

little notice or opportunity to counter Defendant's Motion with its own argument and/or

evidence.

_____Secondly, Defendant has not established grounds for reconsideration. "In order to balance the competing merits of finality and justice, a motion for reconsideration should only be granted if the movant demonstrates '(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." Vermont Pure Holdings, Ltd. v. Nestle Waters North America, Inc., No. 03-11465, 2006 WL 839486, at *3 (D. Mass. March 28, 2006) (quoting Davis, 89 F. Supp. 2d at 147). Defendant has not made such a showing.

_____Defendant's Motion did not identify any "new evidence" from the trial that was not before the Court on the Motion for Summary Judgment. In short, Defendant did not put materially new evidence before the Court, let alone sufficient new evidence to warrant reconsideration.[1]

Finally, Defendant has not established that the Court made a "clear error of law in the first order." Vermont Pure, 2006 WL 839486 at * 3 (quotations omitted). Rather, Defendant "simply rehashes the arguments set forth" in its Motion for Summary Judgment that no contract was formed because, according to Defendant's construction of events, its "counter-offers" to Plaintiff, i.e. the contracts that it signed and sent, were never accepted. Davis, 89 F. Supp. 2d at 147. A Motion for Reconsideration is not "a vehicle for giving an unhappy litigant an additional

---

[1] Indeed, much of Defendant's evidence came during Defendant's own case, *after* Defendant filed this Motion. Moreover, the testimony that Defendant's witnesses did not believe they had formed a contract is insufficient to warrant reconsideration or reversal, based on the totality of all the evidence. Defendant always asserted that it had not entered into a contract, for the same reasons asserted by these witnesses, and the parties always disputed whether a contract was formed.

chance to sway the judge, nor is it intended to allow a party to make arguments already presented

to, and rejected by, the court." Froudi v. United States, 22 Cl.Ct. 290, 300 (1991)(cited by Davis,

89 F. Supp.2d at 147). Defendant's argument, and the evidence that Defendant believes support

its argument were before the Court on summary judgment, and were rejected. Accordingly, I

DENY Defendant's Motion for Reconsideration as to the Breach of Contract claim (Docket No.

38).

      B.    <u>Defendant's Motion to Reconsider Denial of Summary Judgment on Count IV (c.93A)</u>.

      I also DENY Defendant's Motion for Reconsideration of the Court's denial of summary

judgment for Defendant on TLT's c.93A claims, where the Court determined that the alleged

unfair and deceptive conduct did occur "primarily or substantially" in Massachusetts, as required

by c.93A. Order, March 28, 2006 (Docket No. 34). Defendant argues that the Court "relied

largely" on Charles River Data Sys., Inc. v. Oracle Complex Sys. Corp., 788 F. Supp. 54

(D.Mass. 1991), which, Defendant argues, is distinguishable from the case at hand. Defendant is

unpersuasive that reconsideration of the Court's order is appropriate (and misstates the extent of

the Court's reliance on Charles Data).

      Factors that the Court should, and did, consider in deciding whether the complained-of

conduct occurred primarily or substantially in the Commonwealth include: "[1] where the

defendant committed the deception . . . [2] where the plaintiff received and acted upon the

deception . . . [and 3] the situs of plaintiff's losses due to the deception." Garsham Co., Ltd. v.

General Elec. Co., 176 F.3d 1, 7 (1st Cir.1999). As noted in the Court's prior order:

      "Massachusetts is: (1) the location to which Defendant directed all of its communications
      that constitute the alleged misconduct, so that Plaintiff received and acted upon those

allegedly deceptive communications here; (2) the place in which Defendant promised to perform; and (3) the place where Plaintiff suffered its claimed losses."

3/28/06 Order at pg. 3.  At the least, Plaintiff "received and acted upon the deception" in the Commonwealth, and further, the "situs of plaintiff's losses due to the deception" occurred here.  Garsham, 176 F.3d at 7; see also Kuwaiti Danish Computer Co. v. Digital Equipment Co., 438 Mass. 459, 473 (2003) (instructing Courts to look to "whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the commonwealth").  The "center of gravity" of Defendant's alleged unfair or deceptive conduct occurred primarily and substantially in Massachusetts; accordingly, Defendant's Motion as to the c.93A claim (Docket No. 38) is DENIED (Docket No. 38).

C.    Damages for Breach of Contract

I find by a preponderance of the evidence that TLT established contract damages of $34,160.00, i.e. the amount of the extra cost to cover the work that Seating was to have done under the Contract.  See Garsham, 176 F.3d at 5 (recognizing "[i]t is well settled that damages for breach of contract should place the wronged party in as good a position as it would have been in had the other party fully performed its obligation")(applying Massachusetts law).

When the parties cross-moved for summary judgment, they agreed that cover damages were $34,160.00.  See Proposed Joint Statement of Material Facts (Docket No. 13), at ¶ 17 (undisputed that Seating's "total price quoted for both jobs was . . . $480,000.00"): ¶ 57 (Docket No. 13)(stating "TLT ultimately paid Gallivan Company, Inc. ("Gallivan") $316,800.00 for the scope of work on the Reading Project that had been the subject of the negotiations with Seating"); Plaintiff's Response to Proposed Joint Statement of Material Fact (Docket No. 17), at

-5-

¶ 57 (proposing "to amend this fact by changing '*$316,800*' to '*$514,160*'" and changing '*Reading Project*' to '*Reading and Wachusett Projects*,'" citing Gallivan subcontracts); Defendant's Response to Plaintiff's Proposed Additional Material Facts (Docket No. 19), at ¶ 57 (stating "Agreed"). Moreover, both parties moved for summary judgment on all counts, yet Defendant made no argument challenging Plaintiff's assertion that it was "entitled to $34,160 in damages for [Count I] breach of contract." Plaintiff's Cross-Motion for Summary Judgment at pg. 3 (Docket No. 14); see Defendant's Motion for Summary Judgment (Docket No. 11). Defendant only challenged Plaintiff's allegation that a contract had been formed. See Memorandum in Support of Summary Judgment (Docket No. 12). As such, the "amount of damages" for $34,160.00 was "deemed [an] established" fact by the allowance of summary judgment for Plaintiff as to Count I. Fed. R. Civ. P. 56 (d). Accordingly, based on the undisputed facts admitted by Defendant at the summary judgment stage, TLT's cover damages are $34,160.00.

Notwithstanding the foregoing, Defendant raised damages as a trial issue both in the Joint Pre-Trial Memorandum and at the Pretrial Conference. See Joint Pre-Trial Memorandum at pg 10 (noting "the amount of TLT's damages" as a contested issue), pg. 16 (arguing lack of "admissible evidence of [TLT's] actual damages"). To the extent that Defendant is not precluded by the resolution of the damage issue at the summary judgment stage, I separately find, by a preponderance of the evidence, that TLT established at trial that its cover damages amounted to $34,160.00.

Through the testimony of Mr. Kostinden, Plaintiff offered Trial Exhibit 46, which are the payment records from TLT to Gallivan. These establish that TLT has paid, and is paying,

Gallivan for work on the projects that TLT and Seating negotiated.  Mr. Kostinden further testified that Gallivan performed the work on the Reading Project "according to the specifications" and that Gallivan had been paid by TLT for that work, except for an amount being held as retainage by the Awarding Authority.  I find that the "specifications" referred to by Mr. Kostinden are the same specifications that Seating was obligated to satisfy under the contract between TLT and Seating.  I credit Mr. Kostinden's testimony on these points.

Defendant made much of fact that some portion of the Gallivan contract price still has not been paid.  I credit Mr. Kostinden's testimony, however, that such monies will be forthcoming and have only been held as per the "General Conditions of the Contract between the Owner and the Contractor," i.e. pending the conclusion of the entire school building project, which encompasses portions unrelated to the work that Gallivan did perform and which Seating would have performed.  Trial Exhibit 44 (Contract between Gallivan Co. and TLT Construction for Reading Project); Trial Exhibit 40 (Reading Memorial High School Project Manual).

Defendant's witness, Mr. Suprina, testified that the Reading bleacher built by Gallivan was more expensive than the bleacher called for by the TLT/Seating contract.  (Mr. Suprina testified based upon his viewing of the Reading bleacher shortly before trial).  Based upon this testimony, Defendant argued that the actual "cover" damages were less than the simple difference between the Seating and Gallivan contracts, because Gallivan built a more expensive bleacher than required by the Seating Contract.

I reject this argument.  I credit Mr. Kostinden's testimony that Gallivan performed according to the specifications of the architect and awarding authority, which is the same obligation to which Seating agreed in its contract.  Mr.  Kostinden testified that the Reading

Bleacher had been accepted by the architect and awarding authority, according to the project's specifications and addenda. I find that Gallivan was paid only for the same work that Seating was obligated to do under its contract. Furthermore, to the extent of a conflict between the testimony of Mr. Kostinden and Mr. Suprina, I credit the former and reject the latter. Per Mr. Suprina's testimony, I find that Mr. Suprina, and Seating, found the specifications and addenda a "hodgepodge," and not entirely clear. Accordingly, I do not credit Mr. Suprina's testimony that Gallivan performed beyond these "hodgepodge" specifications.

I further credit Mr. Kostinden's testimony that Gallivan is proceeding with the work at Wachusett, and that Gallivan will be paid for its work on that project as well, per the contract between Gallivan and TLT. Trial Exhibit 45 (Contract between Gallivan Co. and TLT Construction for Wachusett Project).

Finally, I find that the issue of bonding does not reduce the contract damages. I find that bonding was to be an "add-on" to the Seating contract, meaning that Seating would be reimbursed for providing it above and beyond the contract price of $480,000.00. I find that the $34,160 in damages is the difference between the Seating contract price , without the bonding add-on, and the Gallivan contract price for the same work. I find that bonding is not a part of the contract between Gallivan and TLT, either as part of the base contract or as an add-on. I further find that Gallivan did not provide a bond to TLT. I reject as unfounded Seating's argument for a reduction of damages by the cost of a bond. Thus, I find by a preponderance of the evidence that TLT established at trial its cover damages in the amount of $34,160.00.

D.    Count IV: M.G.L. c. 93A § 11

A person in trade or commerce who "suffers a loss of money or property . . . as a result of

an unfair or deceptive act or practice" by another in trade or commerce may recover such losses and additional damages under c.93A §11 ("person" includes business, as are at issue here). Similarly, c.93A § 2 allows recovery for unfair methods of competition among businesses.

Plaintiff bears the burden of showing, by a preponderance of the evidence, that Defendant's acts, practices or methods were unfair or deceptive. An act or practice is "unfair if it is . . . immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to other businessmen." Linkage Corp. v. Trustees of Boston University, 425 Mass. 1, 27 (1997)(internal quotations omitted). Given that both parties are "sophisticated business[es]" rather than consumers or "commercial innocent[s]," Plaintiff must show a "greater 'rascality' than would a less sophisticated party." Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 475-76 (1991)(quoting Spence v. Boston Edison Co., 390 Mass. 604, 616 (1983)). Whether the particular actions alleged are unfair and/or deceptive is a question of fact. Boston Pilots v. Motor Vessel Midnight Gambler & E. Coast Excursions, Inc., 357 F.3d 129, 134 (1st Cir.2004).

Though "[c]onduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for c.93A purposes, " Anthony's Pier Four, 411 Mass. at 474 (internal quotations omitted), a "mere breach of contract . . . without more, do[es] not violate chapter 93A." Pepsi-Cola Metropolitan Bottling Co., Inc. v. Checkers, Inc., 745 F.2d 10, 18 (1st Cir.1985)(citing Whittinsville Plaza, Inc. v. Kotseas, 378 Mass. 85 (1979)). Plaintiff did not meet its burden of showing that anything "more" than a breach of contract occurred here.

Plaintiff first tried to establish that Seating made a misrepresentation in its initial offer on the Reading High Project, in which it stated that it "ha[d] worked very closely with this architect

-9-

and ha[d] helped them design this bleacher from the very first steps." Trial Exhibit 1. Plaintiff

argued that this "misrepresentation" met the "something more" required by c.93A. I do not find

Plaintiff has proven the type of misrepresentation or the requisite purpose required by c. 93A. To

the contrary, I find that the Seating employee who drafted the letter had in fact spoken with the

architect about the project's design. At most, I find that this statement was "merely 'seller's talk'

or 'puffing.'" Hannon v. Original Gunite Aquatech Pools, Inc., 385 Mass. 813, 823 (1982). I do

not find that Plaintiff has met its burden to prove the statement is a fraudulent misrepresentation

or unfair method of competition under c.93A.

Similarly, Plaintiff did not establish that Seating "knowingly or willfully" intended "to

coerce [TLT] in[to] paying [Seating] more than the contract required" based upon a "pretext," as

occurred in Anthony's Pier Four. 411 Mass. at 475. At the summary judgment stage, I

determined that the parties did form a contract. Order, December 28, 2005. At trial, Plaintiff did

not prove that anything more than a breach of contract occurred.

I credit Mr. Suprina's testimony that he did not knowingly nor willfully breach a known

obligation in order to coerce TLT to pay more than required under the contract. I find that the

parties had a simple, "bonafide dispute about" their agreement, a dispute to which Plaintiff

contributed by failing to return signed contracts. Levings v. Forbes & Wallace, Inc., 8

Mass.App.Ct. 498, 505 (1979).

I find that Seating's issues regarding payment and performance bonds, insurance limits,

shop drawings and union labor requirements were points that the parties discussed throughout the

parties' relationship. I find that Seating did not advance a sudden or complete change of

position. Accordingly, Plaintiff did not establish that Seating's disagreements were a mere

-10-

pretext reason for seeking additional money. <u>Compare</u> <u>Anthony's Pier Four</u>, 411 Mass. at 475.

In addition, I find that Defendant did not "compound" its breach with any deceptive actions that

"prevented-or at a minimum diverted- the injured parties from seeking redress." <u>Boston Pilots</u>,

357 F.3d at 135. Rather, I find that Defendant expressed concern about what was included in the

pricing shortly after the parties reached agreement. <u>See</u> Trial Exhibit 19 (Letter from Seating

Solutions to TLT dated August 13)(stating that, after completing review of specifications, "we

must increase our . . . price by $19,236.00"). Shortly thereafter, Defendant unequivocally

withdrew its "quotes and proposals." Trial Exhibit 25 (Letter from Seating Solutions to TLT

dated August 30, 2004). Plaintiff has not proven that it was strung along by false promises that

Defendant would perform per the contract. <u>Compare</u> <u>Arthur D. Little, Inc. v. Dooyang Corp.</u>,

147 F.3d 47, 56 (1st Cir.1998)(upholding c.93A liability, noting "Dooyang's wrongful purpose

was to extract a favorable settlement . . . for less than the amount Dooyang knew it owed by

*repeatedly promising to pay, not doing so*, *stringing out the process* and forcing ADL to sue);

<u>Community Builders, Inc. v. Indian Motorcycle Assocs., Inc.</u>, 44 Mass.App.Ct. 537, 558 (1998)

(upholding c.93A liability where Defendant "withheld payment unconscionably, *stringing

[Plaintiff] along in[to] performing more services*")(emphasis added). I find that TLT

immediately understood that Seating was refusing to perform per the contract, based upon

Seating's August 30, 2004 letter, and based upon Plaintiff's quick response that such withdrawal

"was actionable." Trial Exhibit 26 (Letter from TLT's counsel to Seating, dated September 7,

2004). I find that the negotiations that occurred thereafter resulted from TLT's decision to

negotiate with Seating following Seating's unequivocal  statement that it would not perform as

per the contract. This is not a case where a party promised to perform as per a contract while

never intending to so perform (and, in fact, not performing).  See, e.g., Community Builders, 44
Mass.App.Ct. at 558.  As such, Plaintiff has not established that Seating deceived TLT, nor
pursued a strategy to extract concessions in knowing or willful disregard of contractual
obligations.

     Not "[e]very deal that goes sour . . . give[s] rise to a c.93 A claim."  Pappas Industrial
Parks, Inc., v. Psarros, 24 Mass.App.Ct. 596, 600 (1987).  Based on the evidence before me,
Plaintiff did not carry its burden of showing that anything more than a mere breach of contract
occurred here.  Plaintiff did not prove by a preponderance of the evidence that Defendant's
"conduct . . . attain[ed] a level of rascality that would raise an eyebrow of someone inured to the
rough and tumble of the world of commerce."  Levings, 8 Mass.App.Ct. at 504 (1979).

     Plaintiff also failed to meet its burden of showing that it suffered a "'loss of money or
property'" that  "stem[med]" directly from the allegedly unfair act or deception.  Arthur D. Little,
147 F.3d at 56 (quoting c. 93A § 11).  Plaintiff asserted that it had established the "base amount
of C. 93A damages . . . as $34,160" because "the Court previously allowed [Plaintiff's] Motion
for Summary Judgment as to Count I of the Complaint [for breach of contract]."  Joint Pre-Trial
Memorandum at pg. 2.  These damages are not sufficient for c.93A, however.  Plaintiff was
required to show that it lost money or property *directly because* of the unfair or deceptive act.
See Lyle Richards, Int'l. Ltd. v. Ashworth, Inc., 132 F.3d 111, 115 (1st Cir. 1997)(holding
Plaintiff failed to state c. 93A claim where he "claimed no injury *apart* from that caused by the
breach of contract claim" and therefore "failed to allege a 'loss of money or property . . . as a
result of [Defendant's] use or employment of [a] deceptive act . . . [,]' as required by" c.93A §
11)(emphasis in original).  I find Plaintiff failed to show that the $34,160.00, or any portion

thereof, flowed from any unfair or deceptive act.

Finally, as I find for Defendant on Count IV, I further find that Plaintiff is not entitled to attorney fees.

    E.    <u>Defendant's Motion for Judgment as a Matter of Law</u>

Defendant moved for judgment as a matter of law on Plaintiff's c.93A allegations at the close of Plaintiff's case. I reserved judgement at that time, and Defendant renewed its Motion at the close of trial. (Docket No. 38).

"If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue." Fed. R. Civ. P. 52(c). I declined to render judgment as a matter of law, at the time of the Motion, opting instead to hear all of the evidence, which is expressly within my discretion under Rule 52(c). <u>See id.</u> (further stating "the court may decline to render judgment until the close of the evidence"). In light of my decision based upon the merits of the c.93A claim, I DENY Defendant's Motion. (Docket No. 38).

CONCLUSION

For the foregoing reasons, I:

    1)    DENY Defendants' Motion to Reconsider the Court's Allowance of Summary Judgment for Plaintiff as to Count I (Breach of Contract) (Docket No. 38);

    (2)    DENY Defendants' Motion to Reconsider the Court's Denial of Summary Judgment for Defendant as to Count IV (c.93A)(Docket No. 38);

    (3)    FIND that contract damages under Count I are established as $34,160.00

-13-

(4)     DENY Defendant's Motion for a Directed Verdict/ Judgment As a Matter of Law; and

(5)     FIND that Defendant did not violate M.G.L. c.93A.

I further ORDER that JUDGMENT shall enter in favor of Plaintiff on Count I, in the amount of $34,160.00 [2] and that JUDGMENT shall enter in favor of Defendant on Count IV (M.G.L. c.93A §§2, 11). The parties shall submit a proposed form of final Judgment by June 22, 2006.

So Ordered.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States Magistrate Judge

---

[2] The Complaint contained four counts; Counts I and II duplicatively alleged breach of contractual obligations; Count III alleged promissory estoppel based upon Seating's pre-bid quotes under Loranger Constr. Co. v. E.F. Hasuerman Co., 376 Mass. 757 (1978) and was withdrawn at summary judgment, see Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Docket No. 15) at pgs. 8-9); and Count IV asserted c.93A.